**UNITED STATES of America, Appellee,**

v.

**Ahmad AFJEHEI, Defendant–Appellant.**

**No. 351, Docket 88–1214.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 4, 1989.

Decided March 3, 1989.

Douglas T. Burns, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., John Gleeson, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for appellee.

Colleen P. Cassidy, New York City (Legal Aid Soc. Federal Defender Services

Unit, New York City, on the brief), for defendant-appellant.

Before KEARSE, CARDAMONE, and WINTER, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Ahmad Afjehei appeals from a judgment entered in the United States District Court for the Eastern District of New York following a jury trial before Edward R. Korman, *Judge*, convicting him on one count of importation of heroin, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) & (b)(1)(A) (1982 & Supp. IV 1986), and one count of possession of heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(i) (1982 & Supp. IV 1986). He was sentenced to concurrent prison terms of 121 months on each count, to be followed by concurrent 5–year terms of supervised release; he was fined a total of $7,500 and was ordered to pay a special assessment of $50 on each count. On appeal, Afjehei contends principally that the trial court abused its discretion in admitting certain evidence as similar-act evidence pursuant to Fed.R.Evid. 404(b) when there was no indication that the prior acts were similar to the conduct with which he was charged. For the reasons below, we conclude that the evidence was improperly admitted, and we vacate the conviction and remand for a new trial.

## I. BACKGROUND

The present prosecution arises out of Afjehei's arrival in the United States in December 1987 carrying a suitcase containing heroin. Afjehei was indicted on two counts of possession and importation as indicated above. The government's proof at trial revealed the following.

On December 3, 1987, Afjehei, a 24–year–old Iranian citizen having resident alien status in the United States, arrived at John F. Kennedy International Airport from Istanbul. In response to questions from a customs inspector, Afjehei stated that he was a student at UCLA and that the suitcase he was carrying was his. The initial search of the suitcase revealed that it contained clothing and a gym bag; closer inspection revealed that one side had a false bottom. The customs inspector testified that when his search turned to the side of the suitcase with the false bottom, Afjehei's "eyes dropped, his jaw dropped, I saw a big change in his face." Search of the concealed compartment revealed more than 2.3 kilograms, or approximately five pounds, of heroin.

Afjehei was arrested and, after the arrival of a Farsi interpreter, was given *Miranda* warnings. He then stated that he had been given the suitcase by a friend in Turkey who had asked him to deliver it to a person in Los Angeles, Afjehei's destination. Afjehei said he did not have the name or description of the person who was to meet him in Los Angeles, and he denied knowing that there was heroin in the suitcase.

At issue on this appeal is evidence as to prior trips taken by Afjehei, admitted over Afjehei's objections. In his opening statement, the Assistant United States Attorney ("AUSA") noted that Afjehei was a resident of the United States but made frequent trips abroad:

> [AUSA] BURNS: ... [Y]ou will learn that he left the United States.
>
> MR. BRADFORD: [Afjehei's attorney]: I am going to object to this portion of the opening statement.
>
> THE COURT: Overruled.
>
> MR. BRADFORD: Can we have a side bar on this?
>
> THE COURT: No.
>
> MR. BURNS: You will learn that he left the United States and arrived in Turkey the following month, late in the month, on August 27, 1987, and that he then flew back to the United States and was stamped into New York on September 10. And you will learn that he left the United States on November 25 and was stamped back into the United States on December 3, the day he was arrested.
>
> In short, ladies and gentlemen, you will learn various pieces of evidence which paint the overall picture of the defendant who knowingly imported five

pounds of heroin worth a great deal of money into this country . . . .

During its case-in-chief, the government was permitted, again over objection, to introduce Afjehei's Iranian passport and to elicit testimony from a customs agent that the passport revealed a history of "quite a few trips" by Afjehei to Turkey. The evidence showed that in 1987, Afjehei had been in Turkey from February 4 to May 11, from May 15 to July 5, from August 27 to September 10, and from November 26 to December 3. The passport also revealed two trips, of undetermined duration, to Canada in late September and late October of 1987.

At the close of the government's case, Afjehei moved for a mistrial, arguing that the evidence of and references to his other trips were irrelevant, and that any probative value they might have was greatly outweighed by their potential for unfair prejudice. The court denied the motion, stating as follows:

> It seems to me reasonable for the jury to take into consideration the offense as you have outlined in the opening statement; and the state of his mind, whether he was a courier knowingly or not, I think this is relevant.

Afjehei presented a defense consisting principally of the testimony of his brother and a family friend to the effect that Afjehei was in the business of buying American clothes and consumer items and reselling them in Turkey at a profit, and that the trip ending on December 3 had been devoted to this business. Afjehei also introduced the expert testimony of a professor of Middle Eastern studies who stated that it was common for Iranians to ask friends to deliver packages for them when travelling, and that as a matter of etiquette, it was expected that those who were asked would comply.

In its summation, the government reviewed Afjehei's travel history and argued that Afjehei's claim to be a student was "ridiculous," and that it made no "sense . . . that a 24–year–old student was getting on the airplane and flying all over the world." The AUSA argued that Afjehei's witnesses had presented "a concocted story, a desperate attempt to explain the unexplainable, and that is, why is this defendant making all of these trips all over the world?" He stated, "[T]his travel history, and the sheer cost of these tickets, . . . is wholey [sic] and completely inconsistent with any student's lifestyle, and indicates that he is up to something else," and added:

> Clearly, the defendant's travel history, which I just reviewed a moment ago, why is a student flying all over the world, to Zurich, to Canada, to Turkey, to the United States? Where is he getting the funds to do this? Seven hundred and twenty-one dollars for one ticket, what is he really doing on those trips?
>
> As I said before, no sooner does he come into the country as a resident alien, then he is off halfway around the world again. What is he doing?
>
> We know exactly what he's doing on this trip, don't we? Thanks to the work of Customs, we know that he was smuggling heroin.

The jury found Afjehei guilty on both counts of the indictment, and he was sentenced as indicated above. This appeal followed.

## II. DISCUSSION

Afjehei's principal argument on appeal is that, under Rules 403 and 404(b) of the Federal Rules of Evidence, the trial court should have excluded the evidence of his prior trips because its probative value was nonexistent or at least was substantially outweighed by the danger of unfair prejudice resulting from its admission. The government contends (1) that Afjehei's present argument is procedurally barred and (2) that the evidence was admissible on grounds other than those challenged by Afjehei. For the reasons below, we conclude that the prior-trip evidence should have been excluded, and we therefore vacate the judgment of conviction and remand for a new trial.

## A. Preservation of the Issue for Appeal

In support of its procedural argument, the government argues that Afjehei's only timely objection at trial was on the ground of relevance, not on the ground that the probative value of the evidence was outweighed by its prejudicial impact. Although Afjehei's counsel could perhaps have been more articulate in stating the ground of objection, we consider the matter adequately preserved.

Counsel first objected when the AUSA broached the subject of the trips during his opening statement. Though no precise ground for the objection was stated, counsel immediately asked for a sidebar conference; his request was denied. At the end of the government's opening, Afjehei's counsel again asked for a sidebar; again his request was denied. When the government offered Afjehei's passport in evidence, counsel again objected. When the AUSA asked the customs agent about Afjehei's travel history, his counsel objected to the whole line of questioning. Thus, Afjehei objected at virtually every key juncture.

Apparently the government perceived these objections to be on the ground of relevance. Evidence is "relevant" within the meaning of the Federal Rules if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Thus, there is often a close relationship between an objection on the ground of lack of relevance and an objection on the ground that the evidence's probative value is substantially outweighed by the danger of unfair prejudice. Afjehei's motion for a mistrial expressly stated the latter objection. Though it was, of course, too late by that time to exclude the evidence, the trial judge did not in any way suggest that the objection had been waived; nor did he seem surprised by that formulation of the objection or indicate that he had not understood that to be the thrust of the objections made during the government's opening or its case-in-chief.

Given this treatment of the mistrial motion and given the trial court's earlier refusal to permit Afjehei's attorney to approach the bench to elaborate on his objection, we conclude that Afjehei's objections were sufficient to preserve his present argument for this appeal.

## B. Admissibility for Purposes Other Than Proof of Knowledge

The government contends that, in any event, we need not reach Afjehei's contention that admission of the evidence of his prior trips was improper under Rule 404(b) because it was admissible for other purposes. Given the minuscule probative value of these trips for the purposes here advanced by the government, we disagree.

The principal ground urged by the government for admission of the evidence is that it contradicted Afjehei's prearrest statement that he was a "college student." The probative value of the trips for that purpose was frail indeed. Other than the two trips to Canada in the Fall of 1987, which were of undisclosed duration and hence could have been mere one-day or weekend trips, the vast bulk—some five months—of the time Afjehei was shown to have spent abroad was prior to the 1987–88 school year. These trips could not contradict his claim on December 3, 1987, that he was a student, for there was no indication that he had claimed to be a UCLA student in any school year prior to 1987–88.

The only other periods in which Afjehei was shown to be abroad were a two-week period from August 27 to September 10, 1987, and the one-week trip preceding his arrest, which had begun on the day before Thanksgiving. Neither period was shown to be inconsistent with attendance at a university. Nor was there any indication that this 24–year–old had claimed to be an undergraduate student, rather than a graduate student whose freedom to travel could be considerably greater than that reflected in Afjehei's passport during the Fall 1987 school term.

We find no more persuasive the government's argument that the prior-trip evidence was relevant to show Afjehei's "familiarity with international travel, and his relative sophistication in that regard,"

which the government argues make it less likely that he was duped into carrying the drugs and more likely that he carried them knowingly. This chain of reasoning is tenuous. Extensiveness of travel—where the travel is not shown to be narcotics-related—hardly seems an indicator of whether on one particular trip the traveler was duped by a friend or instead acted as a knowing entrepreneur or courier.

■ Even if the evidence had some slight relevance for the two purposes the government advances here, the trial court would be required to weigh that probative value against the likelihood of unfair prejudice. Fed.R.Evid. 403. If these two purposes had been the only bases for the government's proffer of the evidence at trial, we suspect that the trial court would have excluded it, properly, and indeed, the court did not even mention these supposed grounds for admission in refusing to exclude the evidence or to grant a mistrial. Instead, the court concluded that the prior trips were relevant to show "the state of [Afjehei's] mind, whether he was a courier knowingly or not." Accordingly, we turn to the question of the admissibility of the prior-trip evidence as proof of knowledge under Rule 404(b).

C. *Admissibility Under Rules 403 and 404(b)*

■ Under Rule 404(b), although evidence of other acts "is not admissible to prove the character of a person in order to show [that he acted] in conformity therewith," such evidence "may" be "admissible for other purposes, such as proof of ... knowledge." Fed.R.Evid. 404(b). Under this Rule, evidence of other narcotics crimes has been held admissible to show the defendant's intent to be involved in the narcotics transaction at issue, *see, e.g., United States v. Tussa,* 816 F.2d 58, 68 (2d Cir.1987), or to show his knowledge of the narcotics-related character of his acts, *see, e.g., United States v. Terry,* 702 F.2d 299, 316 (2d Cir.), *cert. denied,* 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983); *United States v. Gibbons,* 602 F.2d 1044, 1048–50 (2d Cir.), *cert. denied,* 444 U.S. 950, 100

S.Ct. 421, 62 L.Ed.2d 319 (1979). Nonetheless, evidence of another act should not be admitted to show knowledge unless the other act is "sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge inference advocated by the proponent of the evidence." *United States v. Peterson,* 808 F.2d 969, 974 (2d Cir.1987). "Similarity, being a matter of relevancy, is judged by the degree in which the prior act approaches near identity with the elements of the offense charged. There is no necessity for synonymity but there must be *substantial* relevancy...." *United States v. Kasouris,* 474 F.2d 689, 692 (5th Cir.1973) (emphasis in original); *but see* 2 *Weinstein's Evidence* ¶ 404[12], at 404–90 to 404–91 (1988) (suggesting that trial court is given especially broad discretion to view acts as similar in narcotics cases). If the other-act evidence does not provide a reasonable basis for inferring knowledge, its offer for that purpose should be rejected on grounds of relevance.

■ Further, once the trial court has concluded that other-act evidence is sufficiently similar to be relevant, it must still perform the balancing analysis envisioned by Rule 403, which allows the court to exclude even relevant evidence if its probative value is substantially outweighed by its potential for unfair prejudice. Fed.R. Evid. 403, 404(b) Advisory Committee Note; *see United States v. Peterson,* 808 F.2d at 974. Though a ruling under Rule 403 is reviewed under the abuse-of-discretion standard, *id.,* we have found it such an abuse to admit similar act evidence if the other act or acts are not sufficiently similar to the conduct at issue, or if the chain of inferences necessary to connect the evidence with the ultimate fact to be proved is unduly long. *See id.* (citing cases).

These principles lead us to vacate the judgment in the present case, for the value of the prior trips to show knowledge was nonexistent and the likely prejudice—which came to fruition in the AUSA's summation—was great. Though the court admitted proof of the trips to show that Afjehei had knowledge that the suitcase he carried in

December 1987 contained heroin, in the absence of any indication whatever that they were narcotics-related or were anything other than innocent travel, those trips did not make it any more likely that Afjehei knew he carried narcotics in December 1987. Indeed, in order to impart a narcotics flavor to the prior trips, the government relied on the fact that Afjehei had heroin in his bag in December 1987, for in summation the AUSA argued, "what is he really doing on those trips? As I said before, no sooner does he come into the country as a resident alien, then he is off halfway around the world again. What is he doing? We know exactly what he's doing on this trip, don't we? Thanks to the work of Customs, we know that he was smuggling heroin." The obvious implication of this juxtaposition of questions and answers was that Afjehei was doing the same thing on the prior trips that he was doing on this trip.

■ Thus, the prior trips, not shown to be other than innocent, were admitted to show that Afjehei knew the heroin was in his bag in December 1987, and the December 1987 heroin was used to argue that the prior trips were narcotics-related. In short, the jury was asked to find that Afjehei must have known he carried heroin on this trip because of his extensive travel, the narcotics-related nature of which was to be inferred from the fact that he carried heroin on this trip. Since the government's proof of knowledge was thin, consisting only of the customs inspector's testimony as to Afjehei's facial expression and the implausibility of Afjehei's professed ignorance as to the intended recipient of the suitcase, the circularity of the government's use of the prior trips could only unfairly prejudice the defendant.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is vacated and the cause remanded for further proceedings not inconsistent with this opinion.