**UNITED STATES of America, Appellee,**

v.

**Rupert GORDON, Defendant–Appellant.**

**No. 261 Docket 92–1264.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 19, 1992.

Decided March 4, 1993.

Judith Lieb, Asst. U.S. Atty., Brooklyn, NY (Andrew J. Maloney, U.S. Atty., for E.D.N.Y., Susan Corkery, Asst. U.S. Atty., Brooklyn, NY, on the brief), for appellee.

Henry H. Rossbacher, Los Angeles, CA (Harry C. Batchelder, Jr., New York City, on the brief), for defendant-appellant.

* Honorable Louis H. Pollak, of the United States District Court for the Eastern District of Penn-

Before: KEARSE and MINER, Circuit Judges, and POLLAK, District Judge.*

KEARSE, Circuit Judge:

Defendant Rupert Gordon appeals from a judgment entered in the United States District Court for the Eastern District of New York, following a jury trial before I. Leo Glasser, *Judge*, convicting him of conspiring to import cocaine into the United States in violation of 21 U.S.C. § 963 (1988); importing cocaine, in violation of 21 U.S.C. § 952(a) (1988) and 18 U.S.C. § 2 (1988); and possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2. He was sentenced principally to 63 months' imprisonment to be followed by a five-year term of supervised release. On appeal, Gordon contends chiefly that the evidence was insufficient to support his convictions and that the district court abused its discretion in admitting evidence that he had previously possessed crack cocaine. For the reasons below, we conclude that the evidence was sufficient but that the other-act evidence was improperly admitted, and we therefore vacate the conviction and remand for a new trial.

## I. BACKGROUND

The present prosecution arises out of Gordon's arrival at New York's JFK International Airport ("JFK") in August 1991 to pick up one Vernon Ghullkie, who had arrived on an international flight carrying cocaine and marijuana. The government's proof at trial was presented principally through the testimony of Ghullkie, three government agents, and Jay Edwards, a Greensboro, North Carolina police detective. Taken in the light most favorable to the government, the evidence revealed the following.

### A. *The Events*

Ghullkie was a Guyanan citizen who had lived in the United States since 1985. In the summer of 1991, he met Carlotta Sandi-

sylvania, sitting by designation.

ford, who offered him $2,000 if he would smuggle drugs from Guyana into the United States. Ghullkie agreed, and Sandiford acquired two airline tickets so that they could travel to Guyana together. On August 4, 1991, Ghullkie and Sandiford met at JFK; Sandiford was accompanied by Gordon, whom she introduced as her husband. After Ghullkie and Sandiford were unable to get seats on that day's flight to Guyana, Gordon and Sandiford drove Ghullkie home.

On August 7, Ghullkie again met Sandiford and Gordon at JFK, and this time Ghullkie and Sandiford were able to fly to Guyana. After they arrived in Guyana, Sandiford gave Ghullkie $250 and told him he would return to the United States the following week. While in Guyana, Ghullkie twice asked Sandiford for additional money, but she replied that Gordon had not sent her any money. In fact, on August 9, Gordon sent Sandiford $300.

Before Ghullkie's return to the United States, Sandiford brought him a girdle and tights to wear, and she hid cocaine in the tights. She also gave Ghullkie a plaque, which she said contained marijuana. Sandiford told Ghullkie that Gordon would meet him at JFK. Ghullkie was to deliver the drugs to Gordon, and Gordon would pay him.

When Ghullkie arrived at JFK on August 16, a United States Customs Service inspector noticed that Ghullkie's body shape was odd and that he was sweating profusely, and found that he was unable to answer questions. The inspector searched Ghullkie and found 1,493 grams of 90% pure cocaine, which had a wholesale value of approximately $40–$45,000. The inspector also found marijuana in the plaque in his suitcase.

Ghullkie was arrested and promptly agreed to cooperate. He said he was to deliver the drugs to Gordon, whom he described, and he agreed to wear a hidden recording device for the delivery. Wearing a wire, Ghullkie went to the lobby of the International Arrivals Building and saw Gordon, who approached him. Ghullkie testified that he said to Gordon, "I got the cocaine, you got the money?" and that Gordon "shook his head and said yes, but he got to go talk to his brother-in-law." This conversation was not recorded because Ghullkie's wire picked up only background noise from the lobby, but a government agent saw Gordon nod his head in an affirmative manner.

Gordon left the building without Ghullkie, walked several blocks, turned around, and walked back to a pay telephone across the street from the building. After he appeared to make a pay telephone call, he was arrested. After being given his *Miranda* warnings, Gordon told the agents that earlier that day he had received a telephone call from a friend named Mike James in Guyana who asked him to pick up Ghullkie at JFK. Gordon said he had never seen Ghullkie before but had been given his name and description. Gordon gave the agents a telephone number for James's beeper, but when agents tried the number, they reached what appeared to be only a fax machine. At the time of his arrest, Gordon was carrying, *inter alia*, a business card of the travel agent who had issued airplane tickets to Ghullkie and Sandiford. Ghullkie's name, address, and telephone number were written on the back of the card in Gordon's handwriting.

Several days after the arrests, in the detention center where they were being held, Gordon told Ghullkie that Ghullkie was "the only man that could set him free." Gordon said that if Ghullkie did not "finger him," Gordon could sue the government for false arrest, "and we could get a lot of money."

B. *The Challenged Evidence of Gordon's Prior Arrest*

Gordon was indicted on one count of importing cocaine, in violation of 21 U.S.C. § 952(a) and 18 U.S.C. § 2, one count of conspiring to do so, in violation of 21 U.S.C. § 963, and one count of possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Prior to trial, he objected to the government's proposed introduction of evidence that he had been arrested in April 1990 while in

possession of crack cocaine. The district court ruled that the evidence was relevant to the issue of knowledge and that its probative value would outweigh any prejudice to Gordon.

At trial, Edwards testified that he had arrested Gordon in Greensboro, North Carolina, in April 1990; at the time, Gordon was carrying 3.8 grams of crack cocaine. A search of his house revealed a triple-beam scale, which is often used by narcotics distributors. Edwards testified that Gordon was suspected of being a crack supplier. The district court painstakingly and repeatedly instructed the jury that the detective's testimony was not admitted to show Gordon's character or that he had a propensity to act in a certain way, but only to show that he had knowledge with regard to cocaine and the August 16 events with which he was charged and that his role in those events was not the result of accident or mistake.

The jury found Gordon guilty on all three counts. He was sentenced as indicated above, and this appeal followed.

## II. DISCUSSION

On appeal, Gordon contends principally that the proof was insufficient to support his convictions and that the evidence of his April 1990 crack possession was improperly admitted. Because we believe the latter contention has merit, we vacate the judgment of conviction and remand for a new trial.

### A. *Sufficiency of the Evidence*

Gordon challenges the sufficiency of the evidence to support his convictions, arguing that the evidence established only that he was present at JFK when Ghullkie was arrested and that he knew Sandiford. His challenge has no merit.

■ The general principles governing review of a challenge to the sufficiency of the evidence to support a conviction are well established. We are to view the evidence, whether direct or circumstantial, in the light most favorable to the government, crediting every inference that could

have been drawn in its favor, *see Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Maldonado–Rivera*, 922 F.2d 934, 978 (2d Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991); *United States v. Bagaric*, 706 F.2d 42, 64 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983); *United States v. Carson*, 702 F.2d 351, 361 (2d Cir.), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983), and we must affirm the conviction so long as, from the inferences reasonably drawn, the jury might fairly have concluded guilt beyond a reasonable doubt, *see United States v. Skowronski*, 968 F.2d 242, 247 (2d Cir. 1992); *United States v. Buck*, 804 F.2d 239, 242 (2d Cir.1986); *United States v. Taylor*, 464 F.2d 240, 244–45 (2d Cir.1972). A conviction may be sustained on the basis of the testimony of a single accomplice, so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt. *See United States v. Parker*, 903 F.2d 91, 97 (2d Cir.), *cert. denied*, 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990). Any lack of corroboration goes to the weight of the evidence, not to its sufficiency, and a challenge to the weight of the evidence is a matter for argument to the jury, not a ground for reversal on appeal. *See United States v. Skowronski*, 968 F.2d at 247; *United States v. Parker*, 903 F.2d at 97; *United States v. Roman*, 870 F.2d 65, 71 (2d Cir.), *cert. denied*, 490 U.S. 1109, 109 S.Ct. 3164, 104 L.Ed.2d 1026 (1989).

Thus, the defendant who makes a sufficiency challenge bears a heavy burden. Gordon has not carried that burden with respect to either the conspiracy count or the substantive counts.

■ In order to prove a conspiracy, the government "need not present evidence of an explicit agreement; proof of a tacit understanding will suffice." *United States v. Skowronski*, 968 F.2d at 247; *see United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1191 (2d Cir.), *cert. denied*, 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989). Further, a defendant's knowledge

of the conspiracy and his participation in it with criminal intent may be established through circumstantial evidence. *See United States v. Skowronski*, 968 F.2d at 247; *United States v. Villegas*, 899 F.2d 1324, 1338–39 (2d Cir.), *cert. denied*, 498 U.S. 991, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990); *United States v. Tutino*, 883 F.2d 1125, 1129 (2d Cir.1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990). Such circumstantial evidence may include acts that exhibit a consciousness of guilt, such as false exculpatory statements, *see, e.g., United States v. Rea*, 958 F.2d 1206, 1220 (2d Cir.1992), and attempts to influence the testimony of a witness, *see, e.g., United States v. Macklin*, 927 F.2d 1272, 1279 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 146, 116 L.Ed.2d 112 (1991).

■ Gordon, in support of his argument that there was insufficient evidence that he was a member of the conspiracy to import cocaine, relies principally on *United States v. Nusraty*, 867 F.2d 759 (2d Cir.1989). His reliance is misplaced, for *Nusraty* is easily distinguishable. There, one Detrich was arrested at JFK after arriving from India with luggage containing a suit in which packets of heroin had been secreted. Detrich told the government agents that he was unaware of the heroin and that a friend had asked him to bring the suit to the United States for the friend's brother, the defendant Nusraty, for Nusraty's imminent wedding. Nusraty, however, gave no indication that he knew anything whatever about the suit or the heroin. When Detrich tried to make a controlled delivery of the suit,

he first mentioned to Nusraty that he had heard Nusraty was to be married soon; Nusraty said that he was not getting married. Detrich then said that he had a suit to give Nusraty for his wedding. Again, Nusraty said that he was not getting married. Detrich then asked if [Nusraty's brother] had not told the appellant that Detrich was bringing him a suit. Nusraty replied in the negative. Finally, Detrich asked whether the appellant would drive him to LaGuardia Airport, as [the brother] had promised. The appellant refused; instead, he pointed Detrich towards the line of waiting taxis, and began to walk away.

*Id.* at 761. We concluded that the only facts proven against Nusraty were that he had appeared at the airport to meet Detrich and had falsely stated that the meeting was a coincidence, and we held that those facts were insufficient to support a conviction for narcotics possession, importation, and conspiracy.

The evidence in the present case, though not overwhelming, was considerably more substantial than that in *Nusraty*. Taken in the light most favorable to the government, the record included evidence that Gordon had brought coconspirator Sandiford to the airport for the trip to Guyana; that Sandiford had specified to Ghullkie that upon his return from Guyana, Gordon was to receive the narcotics smuggled in by Ghullkie, and was to pay Ghullkie for the latter's role; and that Gordon came to the airport at the appointed time and approached Ghullkie in the lobby. When Ghullkie said he had the cocaine and asked whether Gordon had the money, Gordon, unlike the defendant in *Nusraty*, did not refuse to accept the drugs or profess any surprise or lack of understanding. Rather, Gordon, *inter alia*, gave an affirmative nod and "said yes." Further, after his arrest, Gordon falsely stated that he had never met Ghullkie before; he gave the agents an unverifiable and implausible explanation for having met Ghullkie at the airport; and a few days later, he suggested to Ghullkie that Ghullkie could profit financially by not identifying Gordon. This evidence was sufficient to permit a rational juror to find beyond a reasonable doubt that Gordon was a member of the conspiracy to import narcotics.

■ Gordon's challenges to the sufficiency of the evidence to support his convictions on the substantive counts must likewise be rejected. A defendant may be found guilty of a substantive crime on an aiding and abetting theory if he joined the criminal venture, shared in it, and contributed to its success. *See, e.g., United States v. Aiello*, 864 F.2d 257, 263 (2d

Cir.1988); *United States v. Zambrano*, 776 F.2d 1091, 1097 (2d Cir.1985). The evidence that, *inter alia*, Gordon was at the airport with Ghullkie and Sandiford on each occasion pertinent to the narcotics-related trip, that he wired money to Sandiford in Guyana, that he went to JFK to meet Ghullkie and get the narcotics, and that he was supposed to pay Ghullkie was, at the very least, sufficient to demonstrate that Gordon aided and abetted Sandiford and Ghullkie in possessing and importing the cocaine.

In sum, there was sufficient evidence to support Gordon's conviction on all counts.

B. *The Admission of Gordon's Prior Possession of Narcotics*

■ Gordon's contention that the district court erred in admitting evidence of his April 1990 crack possession is more persuasive. Under Fed.R.Evid. 404(b), evidence of "other crimes, wrongs, or acts," though inadmissible to prove character or criminal propensity, may be admitted at trial to show that a defendant who claims that his conduct had an innocent explanation had the knowledge or intent necessary to commit the charged offense. *See, e.g., Huddleston v. United States*, 485 U.S. 681, 687–88, 108 S.Ct. 1496, 1499–500, 99 L.Ed.2d 771 (1988); *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir.1992); *United States v. Mills*, 895 F.2d 897, 907 (2d Cir.), *cert. denied*, 495 U.S. 951, 110 S.Ct. 2216, 109 L.Ed.2d 541 (1990); *United States v. Colon*, 880 F.2d 650, 656 (2d Cir.1989). In considering whether to admit other-act evidence offered to show knowledge, the court must determine whether or not the evidence is relevant to that issue, *see* Fed. R.Evid. 401, 402, and whether or not its probative value is substantially outweighed by the danger of unfair prejudice, *see* Fed. R.Evid. 403. *See, e.g., Huddleston v. United States*, 485 U.S. at 687–88, 108 S.Ct. at 1499–500; *United States v. Gilan*, 967 F.2d 776, 780 (2d Cir.1992); *United States v. Colon*, 880 F.2d at 656. The decision to admit evidence pursuant to Rules 404(b) and 403 is reviewable only for abuse of discretion. *See United States v. Gilan*, 967 F.2d at 780; *United States v. Pitre*,

960 F.2d at 1119; *United States v. Sappe*, 898 F.2d 878, 880 (2d Cir.1990).

■ The inquiry into the relevance of the evidence to the issue requires scrutiny of its probative value. Rule 404(b) does not authorize the admission of any and every sort of other-act evidence simply because a defendant proffers an innocent explanation for the charged conduct. *See, e.g., United States v. Corey*, 566 F.2d 429, 431 (2d Cir.1977). To the contrary,

> evidence of another act should not be admitted to show knowledge unless the other act is "sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge inference advocated by the proponent of the evidence." *United States v. Peterson*, 808 F.2d 969, 974 (2d Cir.1987). "Similarity, being a matter of relevancy, is judged by the degree in which the prior act approaches near identity with the elements of the offense charged. There is no necessity for synonymity but there must be *substantial* relevancy...." *United States v. Kasouris*, 474 F.2d 689, 692 (5th Cir.1973) (emphasis in original).... If the other-act evidence does not provide a reasonable basis for inferring knowledge, its offer for that purpose should be rejected on the grounds of relevance.

*United States v. Affjehei*, 869 F.2d 670, 674 (2d Cir.1989). Thus, the probative value of the proffered evidence depends largely on whether or not there is a " 'close parallel' between the crime charged and the acts shown." *United States v. Corey*, 566 F.2d at 431 (quoting *United States v. Chestnut*, 533 F.2d 40, 49 (2d Cir.), *cert. denied*, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 93 (1976)). For example, evidence that the defendants had previously participated in similar drug transactions with the same coconspirators is properly admitted to show that the defendants had knowledge of the conspiracy charged. *See United States v. Pitre*, 960 F.2d at 1117, 1119. Evidence that the defendant had a prior conviction for nearly identical counterfeiting activity was admissible to rebut his claim that he had not known that he received counterfeit money.

*See United States v. Mills,* 895 F.2d 897, 907–08 (2d Cir.), *cert. denied,* 495 U.S. 951, 110 S.Ct. 2216, 109 L.Ed.2d 541 (1990). And evidence that the defendant had previously attempted to import large quantities of narcotics was admissible to rebut his claim that he did not intend to involve himself in his business associate's narcotics importation operation. *See United States v. Ramirez–Amaya,* 812 F.2d 813, 817 (2d Cir.1987).

■ On the other hand, it is an abuse of discretion for the trial court to admit other-act evidence "if the other act or acts are not sufficiently similar to the conduct at issue." *United States v. Afjehei,* 869 F.2d at 674; *see United States v. Peterson,* 808 F.2d at 974. For example, in *Afjehei,* the defendant was arrested in December 1987 as he entered the United States carrying a bag in which heroin had been secreted; he claimed to have been given the bag by a friend and to be ignorant of its unlawful contents. The court allowed the government to introduce evidence that prior to December 1987 Afjehei had made several trips abroad, as proof that he had knowledge that the suitcase he carried in December 1987 contained heroin. We reversed because since the government had not shown that the prior trips involved narcotics, those trips could not logically show that Afjehei knew the bag with which he was arrested contained narcotics.

■ In the present case, Gordon admitted that he intended to pick up Ghullkie at JFK, but he denied any knowledge that Ghullkie was importing narcotics. Though there was other evidence to contradict that claim, the April 1990 crack possession itself did virtually nothing to prove that Gordon knew Ghullkie was importing narcotics. Gordon's April 1990 possession did not involve Ghullkie; according to Ghullkie, the two had never met until shortly before the August 1991 trip. Though cocaine was involved on both occasions, the amount involved in the 1990 possession, *i.e.,* less than 4 grams, was not at all similar to the quantity Ghullkie brought in, *i.e.,* 1.5 kilograms. Nor was there any indication that Gordon's 1990 possession resulted either from his own importation activities or from importation activities of which he had knowledge. We conclude (a) that Gordon's possession 16 months earlier of a modest amount of crack and a triple-beam scale had so little value to prove his knowledge that Ghullkie, whom he had met only recently, was importing a large quantity of cocaine and marijuana that it was inadmissible under Rule 404(b); and (b) that in any event, the probative value of the crack possession was easily outweighed by its potential for unfair prejudice and the evidence therefore should have been excluded under Rule 403. Accordingly, we conclude that admission of that 1990 possession was an abuse of discretion.

■ As indicated in Part II.A. above, the government's admissible evidence against Gordon, while sufficient to support the verdict, was not overwhelming. Its case rested largely on the testimony of Ghullkie, a cooperating witness whose credibility was a seriously contested matter at trial. The government urged the jury to consider Gordon's possession of the 3.8 grams of crack and the triple-beam scale both in its main summation and its rebuttal summation. We can hardly conclude that the crack-possession evidence was "unimportant in relation to everything else the jury considered," *Yates v. Evatt,* —— U.S. ——, ——, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991), *overruled on other grounds, Estelle v. McGuire,* —— U.S. ——, —— n. 4, 112 S.Ct. 475, 482 n. 4, 116 L.Ed.2d 385 (1991), or that the jury's " 'judgment was not substantially swayed by the error.' " *United States v. Ruffin,* 575 F.2d 346, 359 (2d Cir.1978) (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)). Accordingly, the error was not harmless, and Gordon is entitled to a new trial at which evidence of his April 1990 possession is excluded.

### CONCLUSION

The judgment of conviction is vacated and the matter remanded for further proceedings not inconsistent with this opinion.

LOUIS H. POLLAK, District Judge, concurring:

I join the judgment and opinion of the court. I write separately only to underscore the correctness of the court's treatment of the other-acts issue.

In her opinion for the court, Judge Kearse states that:

Rule 404(b) does not authorize the admission of any and every sort of other-act evidence simply because a defendant proffers an innocent explanation for the charged conduct.... To the contrary, "evidence of another act should not be admitted to show knowledge unless the other act is 'sufficiently similar to the conduct at issue to permit the jury reasonably to draw from the act the knowledge inference advocated by the proponent of the evidence.'"

Judge Miner's dissenting opinion does not challenge this general principle. Instead, the dissent argues that in this instance "the showing of similarity [between Gordon's possession of crack and a triple-beam scale in Greensboro in 1990 and his encounter with Ghullkie at JFK in 1991] is sufficient." I disagree. For the reasons set forth by Judge Kearse, I conclude that the similarity standard implicit in Rule 404(b) does not authorize the admission of the Greensboro testimony—and, further, that, even if admissible under Rule 404(b), the Greensboro testimony would fail the Rule 403 test of prejudice.

What particularly impels me to file a concurrence is the dissent's suggestion that conformity with Rule 404(b)'s similarity standard does not need to be scrupulously respected in cases involving narcotics. The dissent quotes the observation by Judge Weinstein and Professor Berger, in their splendid treatise, that "[I]n narcotics cases there seems to [be] far less insistence on similarity." 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 404[12], at 404-74 to 404-75 (1992).

However, the quoted observation is, from a doctrinal perspective, a weak reed—it appears to be a descriptive, not a prescrip-

tive, pronouncement. Some of the cases cited by Judge Weinstein and Professor Berger in documentation of the observation seem to take a spacious view of similarity, others less so;[1] but none of them purports to state, as a matter of law, that, when applied in narcotics cases, the Rule 404(b) similarity standard is more relaxed than in other contexts—i.e., becomes a double standard.

Moreover, the only one of the cases cited by Judge Weinstein and Professor Berger that was decided by this court—*United States v. Roldan–Zapata*, 916 F.2d 795 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1397, 113 L.Ed.2d 453 (1991)—is a case which, in sustaining the admission at trial of certain other-act evidence, clearly illustrates the standard of similarity which the Greensboro testimony admitted against Gordon falls far short of.

In *Roldan–Zapata*, two defendants—Oscar Roldan–Zapata and Pedro Osario–Serna—were charged with conspiring to distribute and to possess with intent to distribute more than five kilograms of cocaine. In addition, Osario–Serna was charged with the substantive offense of possession of more than five kilograms of cocaine with intent to distribute. At trial, a principal government witness was one Eric Akiva, a co-defendant who pleaded guilty and testified against his accomplices. Both Roldan–Zapata and Osario–Serna were convicted. One of Osario–Serna's contentions on appeal was that the district court had erred in permitting Akiva to give testimony with respect to other drug transactions involving Osario–Serna and himself. In rejecting Osario–Serna's objection to Akiva's other-act testimony, this court said the following:

Akiva testified to his previous cocaine transactions with Osario–Serna, which the defendant challenges as inadmissible evidence of uncharged prior similar acts. Akiva testified that to help pay off a debt to his dealer in Miami, he had twice agreed to deliver packages of cocaine received from Osario–Serna and was to receive an additional credit for delivering

---

1. The cases are listed in *Weinstein's Evidence, supra*, at 404-75 n. 14.

the cocaine received on March 10. Akiva also described one of the prior drug deals where both he and Osario–Serna were present. Osario–Serna claims that this evidence was impermissibly elicited for the purpose of showing his propensity to commit such crimes, in violation of Fed. R.Evid. 404(b), and, further, that its probative value was outweighed by the danger of unfair prejudice in violation of Rule 403. We reject both claims.

Rule 404(b) allows evidence of other crimes, wrongs, or acts to be admitted for purposes other than showing a propensity to act in a certain manner, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Under the "inclusionary" approach to the rule followed by this circuit, such evidence "is admissible for any purpose other than to show a defendant's criminal propensity." *United States v. Harris*, 733 F.2d 994, 1006 (2d Cir.1984).

Here, the prior act evidence was admissible "to inform the jury of the background of the conspiracy charged," *id.*, "to complete the story of the crimes charged," *United States v. Brennan*, 798 F.2d 581, 589 (2d Cir.1986), *cert. denied*, 490 U.S. 1022, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989), and to "help[ ] explain to the jury how the illegal relationship between [participants in the crime] developed," *id.* at 590. The pre-existing drug-trafficking relationship between Akiva and Osario–Serna furthered the jury's understanding of how the instant transaction came about and their role in it. This evidence, which represented only a tiny fraction of the testimony heard by the jury, and did not involve conduct any more sensational or disturbing than the crimes with which Osario–Serna was charged, *see United States v. Siegel*, 717 F.2d 9, 16–17 (2d Cir.1983), did not unfairly prejudice Osario–Serna

so as to warrant exclusion under Role 403.
*Id.* at 804.

The difficulty with other-act evidence like the Greensboro testimony admitted against Gordon in the case at bar was pin-pointed by the First Circuit in its opinion in a closely comparable case, *United States v. Lynn*, 856 F.2d 430 (1st Cir.1988).[2] There, the defendant, one Steven Lynn, was charged with participation in a conspiracy to import large amounts of marijuana and hashish from Taiwan and Pakistan in 1981. At trial the government was permitted to introduce evidence of a 1974 arrest and conviction for possession of marijuana with intent to distribute. Lynn was convicted and appealed. In discussing Lynn's challenge to the other-act evidence, the First Circuit pointed out that "Rule 404(b) codifies the common law prohibition against the admission of propensity of evidence— that is, evidence presented to encourage the inference that because the defendant committed a crime once before, he is the type of person to commit the crime currently charged;" and the First Circuit then went on to explain that "[e]vidence of prior bad conduct is, however, often admitted for other relevant and legitimate reasons not intended to reflect upon the character of the accused"—e.g., proof of intent or knowledge. *Id.* at 434–35.

Applying these principles to the case before it, the First Circuit said:

As we have stated, the prior bad acts must have some "special" relevance to something other than propensity—in this case the intent of Lynn to participate in the conspiracy. In other words, there must be some articulable inference for the jury to draw from the previous offense other than that the defendant had the bad character and therefore more probably had the intent to commit the crime he is now charged with. With these considerations at hand, the proba-

---

**2.** One respect in which *Lynn* and the case at bar are not comparable is that the time interval between the prior offense and the offense charged was considerably longer in *Lynn*.

*Lynn* is one of the cases cited by Judge Weinstein and Professor Berger in documenting their

observation that there is "less insistence on similarity" in narcotics cases, but it is cited with a prefatory *"But see."* *Weinstein's Evidence, supra,* at 404–75 n. 14.

tive worth of Lynn's conviction toward proving his intent to commit the instant offense is difficult to conceptualize. The states of mind of someone who consummated a street sale to an undercover agent and one who participated in an international smuggling conspiracy are connected primarily by the fact that both engage in criminal enterprises involving drugs. The ordinary inference here would seem very close to the inference the Rule was designed to avoid.

*Id.* at 436 (footnotes omitted).

The reasons adduced by the First Circuit for finding error in the admission of the other-act evidence in *Lynn* are precisely applicable to the case at bar.

MINER, Circuit Judge, dissenting:

I do not agree that the other act evidence presented in this case was so dissimilar to the conduct at issue that the district judge abused his discretion when he received it under the provisions of Fed.R.Evid. 404(b). I also do not agree that the probative value of the other act evidence was outweighed by its prejudicial effect so that the evidence should have been excluded under Fed. R.Evid. 403. These disagreements compel my respectful dissent.

The other act evidence was presented through the testimony of Detective Jay Edwards of the Greensboro, North Carolina Police Department. Detective Edwards testified that he arrested Rupert Gordon in Greensboro and seized approximately four grams of crack cocaine during a search of Gordon incident to the arrest. Detective Edwards testified that he then obtained a search warrant for Gordon's house and there discovered a triple-beam scale, "a device often used to weigh drugs for distribution," *United States v. Beaulieau,* 959 F.2d 375, 377 (2d Cir.1992). Without objection, the court also received the following response to a question put to Detective Edwards relating to the basis for his suspicion that cocaine or crack cocaine might be found in defendant's house:

Information from a confidential informant, a recent seizure of crack cocaine in the Greensboro area in which *we suspect-*

*ed Mr. Gordon to be the supplier,* information that was found in the documents showing that Rupert Gordon did live at the apartment.

Trial Tr. at 181 (emphasis added).

My colleagues conclude that this other act evidence is of little value in proving Gordon's knowledge that Ghullkie was importing marijuana and cocaine. I think that the evidence is valuable in showing knowledge of drug dealing activity and that the showing of similarity is sufficient. There is no requirement that the prior act evidence demonstrate specific knowledge of *importation.* "[I]n narcotics cases there seems to [be] far less insistence on similarity." 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 404[12], at 404–74 to 404–75 (1992). We have held that other act evidence should be admitted to show knowledge if the act is "sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge inference advocated by the proponent of the evidence." *United States v. Peterson,* 808 F.2d 969, 974 (2d Cir.1987). It seems to me that the evidence of drug dealing in Greensboro is sufficiently similar to the drug dealing in New York to permit the inference of knowledge.

Under Rule 404(b) "evidence of other narcotics crimes has been held admissible to show the defendant's intent to be involved in the narcotics transaction at issue . . . or to show his knowledge of the narcotics-related character of his acts." *United States v. Affjehei,* 869 F.2d 670, 674 (2d Cir.1989) (citation omitted); *see also United ed States v. Mickens,* 926 F.2d 1323, 1329 (2d Cir.1991) ("Mickens' prior involvement in narcotics activity was relevant to the prosecution's tax evasion and money laundering theory that narcotics sales provided the cash which Mickens spent so lavishly."), *cert. denied,* —— U.S. ——, 112 S.Ct. 940, 117 L.Ed.2d 111 (1992). Applying the rules enunciated in these cases, I would conclude that the narcotics-related activity engaged in by Gordon in Greensboro was relevant to the issue of knowledge and intent in this case. *See United States v. Colon,* 880 F.2d 650, 656 (2d Cir.1989).

Finally, it seems clear to me that the probative value of the prior drug dealing was not outweighed by its potential for unfair prejudice within the meaning of Rule 403. "A trial court's ruling, following a 'conscientious assessment' of the Rule 403 factors, will not be overturned on appeal absent a clear showing of abuse of discretion." *United States v. Martino*, 759 F.2d 998, 1005 (2d Cir.1985). No abuse of discretion can be found, where, as here, a showing of knowledge and intent is required in order for the prosecution to meet its burden of proof and the prior act evidence is relevant, similar and probative. *Id.*