**UNITED STATES of America Appellee,**

v.

**Tyrone MINGO Defendant,**

**Jenard Smalls Defendant–Appellant.**

**No. 03–1025.**

United States Court of Appeals,
Second Circuit.

Sept. 26, 2003.

Scott Brettschneider, (Randall D. Unger, of counsel), Kew Gardens, New York, for Appellant.

Daniel S. Ruzumna, Assistant United States Attorney, Southern District of New York (James B. Comey, United States Attorney, and Evan T. Barr, Assistant United States Attorney, on the brief), New York, New York, for Appellee.

PRESENT: FEINBERG, RAGGI, Circuit Judges, and McKENNA,[1] District Judge.

## SUMMARY ORDER

Defendant–Appellant Jenard Smalls was convicted after a jury trial of (1) one count of conspiring to commit bank fraud, *see* 18 U.S.C. § 371; (2) two counts of bank fraud, *see* 18 U.S.C. § 1344; and (3) one count of possession of a forged security, *see* 18 U.S.C. § 513. Sentenced to twenty-seven months' incarceration, three-years' supervised release, and a $400 special assessment, Ms. Smalls challenges her judgment of conviction on the grounds that (1) the evidence at trial was insufficient to establish her knowing and willful commission of the charged crimes, and (2) the district court erroneously applied Fed. R.Evid. 403 and 404(b) when it admitted uncharged bad act evidence of Ms. Smalls's prior deposits of three forged checks.

## I. *Sufficiency of the Evidence*

We review *de novo* a sufficiency challenge to the evidence supporting a criminal conviction. *United States v. Reyes,* 302 F.3d 48, 52–53 (2d Cir.2002). We must affirm if the evidence, when viewed in its totality, *see United States v. Autuori,* 212 F.3d 105, 114 (2d Cir.2000), and "in the light most favorable to the government," *United States v. LaSpina,* 299 F.3d 165, 180 (2d Cir.2002) (quoting *United States v. Dhinsa,* 243 F.3d 635, 648 (2d Cir.2001)), would permit any rational jury to have found the essential elements of the crime beyond a reasonable doubt, *id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The deference accorded a jury verdict "is especially important when reviewing a conviction of conspiracy . . . because a con-

spiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare with the precision of a surgeon's scalpel." *United States v. Pitre,* 960 F.2d 1112, 1121 (2d Cir.1992) (internal quotation marks omitted). Once a conspiracy is shown to exist, "only slight evidence is required to link another defendant" to it. *United States v. Aleskerova,* 300 F.3d 286, 292 (2d Cir.2002) (quoting *United States v. Abelis,* 146 F.3d 73, 80 (2d Cir.1998)). As with other elements of conspiracy, "a defendant's knowledge of the conspiracy and [her] participation in it with criminal intent may be established through circumstantial evidence." *United States v. Gordon,* 987 F.2d 902, 906–07 (2d Cir.1993); *see also United States v. Reyes,* 302 F.3d at 53. Applying these principles to the evidence in this case, we conclude that a rational jury could certainly have found Ms. Smalls guilty of the charged crimes.

The scheme to commit bank fraud by submitting falsified applications for lines of credit was established through evidence of telephone calls and meetings between a co-defendant, Tyrone Mingo, and an FBI cooperating witness or, on one occasion, an undercover FBI agent. At the July 30, 2001 meeting attended by the agent—who was posing as a person willing to file a fraudulent application with the First Union National Bank—Mingo provided the agent with various financial documents in a false identity, including false tax returns. Mingo instructed the undercover agent that she would soon be interviewed by a bank employee, "Vito." In reassuring the agent about this interview, Mingo revealed that he had a "partner" in the scheme who had recently applied for a similar line of credit and been approved

---

1. The Honorable Lawrence M. McKenna of the United States District Court for the South-ern District of New York, sitting by designation.

for $100,000. Further, that "partner" would soon be joining them.

Shortly thereafter, Jenard Smalls appeared at Mingo's office. Ms. Smalls correctly observes that a person's mere presence at a conspiratorial meeting is insufficient to prove knowing and willful membership in the criminal scheme, *see United States v. Abelis*, 146 F.3d 73, 80 (2d Cir.1998), but the facts adduced at trial evidenced much more than mere presence. Ms. Smalls's comments on July 30, 2001, about the happy consequences of her own conversation with Vito; her advice to the undercover agent about what to expect in her bank interview; Ms. Smalls's request to see the false financial documents that Mingo had just given the agent; and her reaction to those documents that "[t]his is what I did," when viewed in their totality and in the light most favorable to the government, supported a rational jury's finding that she was indeed a knowing member of the charged fraud conspiracy and intent on advancing its criminal goals. *See id.* (observing that defendant's presence may evidence membership in a conspiracy if the totality of circumstances indicates that presence was intended to advance the goals of that conspiracy).

Ms. Smalls's knowing participation in the conspiracy, indeed, her knowing and willful commission of substantive bank fraud, was further evidenced by the fact that she herself submitted patently false documents in connection with her own line of credit application. Among these documents were false tax returns prepared, like those given to the undercover agent, by "Johnie Simmons" of "J.M.S. Services." The evidence showed that in July 2001, Ms. Smalls paid three separate visits to "Johnie Mae Simmons" at the address listed on the tax returns for J.M.S. Services.

Finally, when Ms. Smalls was arrested for bank fraud, she had in her possession a counterfeit check in the amount of $91,000 made payable to her company, Smalls Multimedia Film Production ("Smalls Multimedia"), by Lambertson Truex, Inc. The jury could reasonably have inferred Ms. Smalls's knowledge that the check was fraudulent from the fact that neither she nor her company had any relationship with Lambertson Truex that would have explained that company's issuance of a valid check to Smalls Multimedia in such a large amount. *See generally Barnes v. United States*, 412 U.S. 837, 845–46, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973) (holding that common sense and experience permitted jury to conclude from defendant's unexplained possession of recently-stolen checks that defendant must have known or been aware of the high probability that checks were stolen). As for Ms. Smalls's intent to use the counterfeit check to defraud, such an inference was supported by her submission of false documents in connection with the charged bank fraud, as well as by her February 1999 and February 2002 deposit of other forged checks made payable to her or Smalls Multimedia.

Ms. Smalls submits various innocent explanations for her conduct, but the law is well-established that "the task of choosing among competing, permissible inferences is for the fact-finder, not for the reviewing court." *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir.2001). Because a rational jury could infer from the evidence adduced at trial that Ms. Smalls was a knowing and willful participant in each of the crimes charged, we must reject her sufficiency challenge to the judgment of conviction.

## II. *Admission of Uncharged Bad Acts*

■ Ms. Smalls asserts that the district court erred when it permitted the prosecu-

tion to offer evidence of previous occasions in 1999 and 2001 when she deposited forged checks made out to herself or Smalls Multimedia. In *Huddleston v. United States,* 485 U.S. 681, 685, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the Supreme Court ruled that evidence of uncharged bad acts may be admitted consistent with Fed.R.Evid. 403 and 404(b) if it is relevant to a proper purpose and if the probative value outweighs any unfair prejudice. Rule 404(b) expressly recognizes "knowledge" and "intent" as issues for which uncharged bad act evidence may be admitted. In this case, the district court found that the prior forged check deposits were relevant to these sharply disputed issues and that the probative value of this evidence outweighed any unfair prejudice. We review the district court's ruling for "clear abuse of discretion," *United States v. Pipola,* 83 F.3d 556, 566 (2d Cir.1996), and find none in this case.

When knowledge and intent are disputed, a defendant's commission of similar bad acts is generally deemed probative. *See, e.g., United States v. Downing,* 297 F.3d 52, 59 (2d Cir.2002) (holding that where defendant disputed his knowledge and intent to facilitate securities fraud by producing false audit reports, evidence of his prior preparation of false audit reports in connection with a similar fraud scheme was properly admitted). While the charged and uncharged acts must be closely parallel for the probative value of the latter on the issue of knowledge to outweigh any unfair prejudice, absolute synonymity is not required. *See United States v. Gordon,* 987 F.2d at 908. For example, in *United States v. Thomas,* 54 F.3d 73, 82 (2d Cir.1995), we ruled that a defendant's uncharged participation in an earlier scheme to transport stolen money orders was admissible on the issue of his knowing fraudulent procurement of the charged money orders. So in this case,

the uncharged acts may have involved forged checks and the charged acts a variety of false account statements and tax returns, but the necessary parallel was sufficiently established by the fact that, in both circumstances, Ms. Smalls attempted to obtain money from banks by submitting falsified documents.

In sum, the district court acted within its discretion in concluding that Ms. Smalls's history of forged checks deposits was relevant to whether (1) she knew that she was submitting falsified documents in connection with the charged bank fraud scheme, and (2) she knew that the Lambertson Truex check in her possession was counterfeit and intended to use it in an attempt to defraud. The district court similarly acted within its discretion in concluding that the probative value of the evidence outweighed any unfair prejudice. *See United States v. Downing,* 297 F.3d at 59 (noting that appellate court maximizes probative value of uncharged crime evidence and minimizes its prejudice in reviewing district court decision to admit). Indeed, the court properly sought to protect against unfair prejudice by carefully instructing the jury on the limited purpose for which it could consider the evidence of defendant's prior forged check deposits.

Because appellant's arguments urging reversal are without merit, we hereby AFFIRM the judgment of conviction.