**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Armando MANSO–PORTES and Carlos Picon, Defendants–Appellants.**

Nos. 88–1481, 88–1517.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 16, 1988.

Decided Feb. 6, 1989.

Stephen M. Komie, Joshua Sachs, Chicago, Ill., for defendants-appellants.

Laurie N. Feldman, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, POSNER, and MANION, Circuit Judges.

MANION, Circuit Judge.

Defendants appeal from convictions for conspiracy to distribute cocaine, aiding and abetting in distribution of cocaine, and use of a telephone to facilitate the conspiracy. We affirm the convictions.

### I.

On November 18, 1986, Dario Espinosa–Alvarez, a prisoner at the Metropolitan Correction Center in Chicago, told government informant Frank White that a "married couple" would deliver cocaine to White. A week later, White received a call from Nancy Perez, who identified herself as the wife of Dario's friend. A few days after that, Nancy Perez called White to report that she and "Pedro" would come to Chicago on November 29, but they never arrived.

However, that same night White did receive a call from a man whose voice government agents later attributed to Armando Manso–Portes. Manso–Portes turned the phone over to a second man, later identified as Carlos Picon. It is undisputed that White pressed Picon to promptly advise White of developments. Minutes later, Nancy Perez called White to say that she and Pedro were about to register at the Westin Hotel.

The next day, White and DEA Agent Frank Tucci met Nancy and Pedro Perez at the Westin Hotel. The Perezes, White, and Tucci then drove to the parking lot of the Ohio House Motel where Nancy Perez recognized an Oldsmobile that had arrived from Florida. The Perezes went into the hotel and returned some minutes later with Manso–Portes. The Perezes, driving the Oldsmobile, followed Tucci and White to a commercial parking garage in Rosemont, Illinois.

While in the garage, Pedro began removing the rear bumper from the Oldsmobile. This consumed approximately an hour.

During the removal, Tucci praised how the cocaine was well hidden. Nancy commented that previously the police stopped the car in Louisiana but did not find the hidden drugs. She added that there had been a second police stop in Louisiana during a drive in the opposite direction when the car was carrying money, but the police didn't find that either.

After removing the bumper, Pedro Perez removed four kilograms of cocaine hidden in a compartment behind it. Nancy and Pedro Perez were then arrested. Manso–Portes and Picon were later arrested at the Ohio House Motel.

DEA agents had watched the Oldsmobile and defendants Manso–Portes and Picon since the morning of November 30. In Manso–Portes's billfold agents found a paper listing Tucci's and Pedro's telephone numbers. Agents also took Picon's address book which contained the telephone numbers of Armando and Ignacio Manso–Portes (Armando's brother). Both defendants denied having met anyone in Chicago, and denied having entered the Oldsmobile. Although they claimed they travelled to Chicago from Miami by bus instead of in the Oldsmobile, neither Picon nor Manso–Portes could identify the bus company.

At trial, the government supplemented Tucci's testimony regarding Nancy Lopez's reference to the two Louisiana police stops. The government introduced the testimony of Louisiana state troopers who had twice in October 1986 stopped an Oldsmobile containing both Ignacio and Armando Manso–Portes. The stops had been for speeding and for tailgating respectively. Trooper Douglas Robertson, who stopped the car on October 2, 1986, identified Armando Manso–Portes and recognized a photo of the Oldsmobile. While Robertson searched the car, he noticed that Armando was visibly shaking and sweating despite 50–degree weather.

Sergeant Robert D. Fogelman and Trooper Richy LaSalle testified that on October 9, 1986, they searched the same vehicle in which both Armando and Ignacio Manso–Portes were riding. Armando again was fidgeting and shaking.

Before trial, Picon had argued that this "Louisiana stop" evidence should be admitted because it would show that he had not been there. He wanted his trial severed from that of Manso–Portes if the stop evidence were kept out. He later changed his trial strategy and objected to the evidence.

Over the objection of both defendants, the district court at the conclusion of the evidence instructed the jury:

You have heard evidence of acts of the defendant Armando Manso–Portes other than those charged in the indictment. You may consider this evidence only on the question of the knowledge and intent of both of the defendants. You have heard evidence of statements of the defendant Armando Manso–Portes to the Louisiana troopers. You may consider this evidence only on the question of the knowledge and intent of the defendant Armando Manso–Portes. This evidence is to be considered by you only for these limited purposes.

The trial court instructed the jury that it was defendant Armando Manso–Portes's theory of the case that he was not a member of a conspiracy to deliver cocaine, and not guilty of the charges alleged. The trial court further instructed that it was defendant Picon's theory with respect to conspiracy that Picon had not conspired to violate federal narcotics law, but was merely with Manso–Portes on vacation. The trial court likewise charged that it was Picon's theory of the case that he did not knowingly, intentionally, or willfully participate in aiding, abetting, counseling or commanding the sale of cocaine, nor did he knowingly or intentionally use a telephone in a conspiracy to distribute cocaine, or knowingly aid or abet in cocaine distribution.

The jury returned verdicts of guilty upon all counts charged against each defendant, including conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, aiding and abetting in the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), and use of a telephone to facilitate their conspiracy in violation of 21 U.S.C. § 843(b).

On appeal, Manso–Portes claims that the district court violated Fed.R.Evid. 404(b) by admitting evidence of the Louisiana stops because the government did not prove by clear and convincing evidence that these similar acts actually had been committed. He also claims that the court should have ruled on information in the presentence report which indicated he occupied a managerial position in the conspiracy. The gist of the latter claim is that the district court should have ruled whether this characterization of him by the probation officer was supported by any evidence before the court, because it is a declaration of fact detrimental to him.

Picon, on the other hand, complains that the district court should not have admitted evidence of the Louisiana stops since Picon had not been present, and that the jury should not have been instructed that those stops could be considered in assessing his knowledge and intent.

## II.

### A.

Manso–Portes argues that the district court erred in denying his motion in limine concerning the stops of the auto in Louisiana, in permitting the government to introduce the stop evidence and argue consequent inferences, and in giving over objection the related government instruction regarding knowledge and intent. Fed.R. Evid. 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Under *United States v. Shackleford*, 738 F.2d 776 (7th Cir.1984), evidence of other crimes, wrongs, or acts must, given Fed.R. Evid. 404(b), have been clear and convincing. However, the May 2, 1988, opinion of the Supreme Court in *Huddleston v. United States*, —— U.S. ——, 108 S.Ct. 1496, 99

L.Ed.2d 771 (1988), has virtually superseded all of the authorities originally cited concerning this issue. The appellants concede this and have necessarily abandoned the *Shackleford* defense.

In *Shackleford* this court held that under Fed.R.Evid. 404(b), evidence of extrinsic conduct was admissible if directed toward something other than propensity—e.g., motive, opportunity, preparation, knowledge, intent, absence of mistake or accident, or identity. 738 F.2d at 779. This court then read Fed.R.Evid. 404(b) in tandem with Fed.R.Evid. 403, declaring that even if evidence fell within one of the Fed.R.Evid. 404(b) areas of proof, Fed.R.Evid. 403 would compel its exclusion if its probative value were substantially outweighed by risk of unfair prejudice. Admission of evidence of prior or subsequent acts could be approved under *Shackleford* if: (1) the evidence were directed toward establishing a matter at issue other than defendant's propensity to commit a charged crime; (2) the evidence demonstrated that the other act is sufficiently similar and sufficiently close in time to be relevant to the matter at issue; (3) *such evidence were clear and convincing;* and (4) the evidence's probative value were not substantially outweighed by risk of unfair prejudice. *Id.* (Emphasis added.)

In *Huddleston* the Supreme Court unanimously resolved a conflict among the courts of appeals as to whether the trial court must make a preliminary finding before "similar act" and other Rule 404(b) evidence is submitted to the jury, expressly noting that this circuit had required the government to prove to the court by clear and convincing evidence that the defendant had committed the similar act. 108 S.Ct. at 1499 n. 2. *Huddleston* holds that a district court need not itself make a preliminary finding that the government has proved the "other act" even by a preponderance of the evidence (much less by clear and convincing evidence) before submitting the evidence to the jury. *Id.* at 1501. This removed the third admissibility test of *Shackleford. United States v. Rollins*, 862 F.2d 1282, 1294 (7th Cir.1988). The emphasis in *Huddleston* is on admissibility.

While Fed.R.Evid. 404(b) does not permit evidence of prior similar acts to prove character, it does permit it for other purposes. It does not bar such evidence even if not offered for any of the nine purposes listed in 404(b). Congress amended its draft of this rule to emphasize admissibility. 10 Moore & Lucas, *Moore's Federal Practice* §§ 404.01[3], 404.21[2] at pp. 90, 114 (2d ed. 1988).

Under Fed.R.Evid. 401 and 402,[1] relevant evidence (i.e., that making the existence of any fact in controversy more or less likely) is admissible unless otherwise provided in the Rules themselves. Admissibility under Rule 404(b) is assessed under the usual rules for admissibility: Does the danger of undue prejudice outweigh the probative value of the evidence given the context? 108 S.Ct. at 1500. Defendants like Manso–Portes remain shielded from a recitation before the jury of "a litany of potentially prejudicial similar acts" connected to a defendant only by unsubstantiated innuendo. *Id.* at 1501. They are protected because relevancy means the relationship between the item of evidence and the matter properly provable in this case. *Id.*

■ Applying this principle, the jurors needed only to reasonably believe that the two Louisiana stops actually had occurred and that cocaine or money had been hidden in the stopped car. Because such conclusion was reasonable from the Louisiana–related evidence, this evidence was admissible concerning the "other act" under Fed. R.Evid. 404(b). The district court here did not err concerning Fed.R.Evid. 404(b).

Similar act evidence is relevant when and only when jurors reasonably can decide that the "other act" occurred and that the defendant was the actor. 108 S.Ct. at 1501. In the cause before us, the evidence was indicative that Manso–Portes was moving cocaine or money through Louisiana. It was relevant under the prosecution's theory because jurors reasonably could find

that this related to the criminal conspiracy in cocaine trafficking.

### B.

The pertinent *Shackleford* defense having been literally overridden by *Huddleston*, the defendants, especially Manso–Portes, seek refuge in the balancing test of Fed.R.Evid. 403, which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

■ But neither defendant raised this 403 defense in the trial court. To preserve an issue for appellate review, a party must properly object so as to alert the district court and the opposing party to the objecting party's specific grounds for objection. The specific premise for reversing upon appeal an evidentiary ruling must be the same premise as that declared properly in the objection during trial. *U.S. v. Wynn,* 845 F.2d 1439, 1442 (7th Cir.1988). The "similar act" issue of Fed.R.Evid. 404(b) is distinct from the "unfair prejudice" issue of Fed.R.Evid. 403. On its face, the Fed.R. Evid. 403 issue cannot have been preserved by an objection to the evidence premised upon Fed.R.Evid. 404(b) grounds.

Manso–Portes did not argue the admissibility of the evidence under Fed.R.Evid. 403 in the first place. He now argues that it was at least implicitly included in the *Shackleford* test. He asserts that the balancing test of Fed.R.Evid. 403 was "virtually" subsumed in the Fed.R.Evid. 404(b) test. He consequently proposes remand to the district court for the separate evaluation of prejudice and probative value under Fed.R.Evid. 403. However, *Huddleston* rejected the suggestion that in performing the balancing prescribed by Fed.R.Evid. 403, a trial court must find that the prejudicial potential of similar acts evidence sub-

---

1. Fed.R.Evid. 401 provides:
   "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determina-

tion of the action more probable or less probable than it would be without the evidence. Fed.R.Evid. 402 is quoted later in the text of the opinion.

stantially outweighs its probative value unless the court concludes by a preponderance of the evidence that the defendant had committed the similar act. 108 S.Ct. at 1501 n. 6.

We do not believe that the balancing test of Fed.R.Evid. 403 has been subsumed into any Fed.R.Evid. 404(b) test so as to require us to hold that the Fed.R.Evid. 403 principle need not have been argued and preserved for appeal. Manso–Portes could have made a Fed.R.Evid. 403 argument at the appropriate time, but he did not. Nor was there plain error here under Fed.R. Crim.P. 52(b).[2] Since this unique argument is made for the first time on appeal, it is waived.

### III.

#### A.

■ Appellant Picon complains that the district court erred in instructing the jury that related acts (the Louisiana stops) attributed only to Manso–Portes could also be considered against Picon on the issues of knowledge and intent. He contends that Louisiana stop evidence was inadmissible as to him under Fed.R.Evid. 402, because it had no relevancy or probative value in his case. It is undisputed that Picon was not present when police twice stopped the car in Louisiana.

Fed.R.Evid. 402 provides:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

On the record before us we hold that the district court acted within its sound discretion in admitting the Louisiana stop evidence against Picon. This was evidence of conspiracy involving Perez and Manso–Portes, with whom Picon was found in Chicago. Alternatively, jurors could have de-

termined that Picon's absence during the Louisiana stops demonstrated Picon's lack of scienter or participation in the conspiracy. The evidence in either eventuality is relevant to Picon's *mens rea.*

Indeed, our review of the record below confirms that before the trial began Manso–Portes moved *in limine* for exclusion of evidence relating to the Louisiana stops. At that juncture counsel for Picon offered: "In the event that the Court were not to allow the testimony of the trooper, that puts me in the position of having to ask for a severance because of the use of the word 'day' in the descriptions by Nancy of the prior event down in Louisiana. Because the trooper, if called to testify, would testify that Mr. Picon was not there at that occasion and was never observed in the course of the stop."

While the district court may never have ruled on Picon's original position (since the evidence was ultimately admitted), the logic originally advanced by counsel for Picon remains valid. The jury could have found the testimony favorable to Picon but convicted him on other evidence. We are persuaded that the Louisiana evidence was admissible under Fed.R.Evid. 402 notwithstanding the later change of trial strategy taken by Picon.

#### B.

Although Picon made no reference to it, this court is aware of the statement in *Huddleston,* 108 S.Ct. at 1501, that "In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and the defendant was the actor." *Cf. United States v. Beechum,* 582 F.2d 898, 912, 913 (5th Cir.1978) (en banc). Manso–Portes may have been an "actor" in Louisiana, but Picon definitely was not.

Fed.R.Crim.P. 52(a) provides: "Any defect, irregularity or variance which does not affect substantial rights shall be disregarded." Even disregarding the Louisi-

---

**2.** Fed.R.Crim.P. 52(b) provides:
Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

ana testimony, there remains evidence of conspiracy encompassing Perez and Manso–Portes, with whom Picon was discovered in Chicago. Picon was seen in or near the car containing the narcotics.

Significantly, the Louisiana stop testimony actually may have reinforced Picon's defense; it remains undemonstrated that it hurt him. Once more, the logic originally advanced by counsel for Picon remains valid. Assuming arguendo the relevance of this passage from Huddleston to Picon's situation, and assuming Fed.R.Evid. 404(b) error, the error obviously was harmless.[3]

## IV.

Prior to the imposition of sentence counsel for defendant Manso–Portes challenged the pre-sentence report of Probation Officer Lucero in characterizing Manso–Portes as having a "managerial position" in the crime. The district court responded:

> It is my opinion and position that the matter under parole guideline data, which is under the paragraph called "Evaluation" is exactly that. It is the evaluation of Mr. Lucero in this particular case, the Probation Officer. It is not a matter of factual material such as is called for under the rule, so that no particular finding is necessary on my part. It is not binding either on me or on the Parole Commission except to the extent that they wish to take the Probation Officer's assessment into account in whatever action that I may wish to take or that the Parole Board may wish to take. So that is a matter that, as you point out, you can address in your comments concerning the appropriate disposition.

Manso–Portes now asserts that the district court erred in its refusal to rule upon whether the "managerial position" characterization was supported by evidence before the court. He contends such a ruling was called for because he supposes the characterization to be one of fact, and working to his detriment.

On Counts I and II of the indictment (conspiracy to distribute cocaine, and aiding and abetting in the distribution of cocaine) the trial court sentenced Manso–Portes to five years each, to be served concurrently. The government reminds us that the district court imposed the minimum mandatory incarceration term prescribed by 21 U.S. C. § 841(b)(1)(B). Appellant Manso–Portes acknowledges that he received the minimum sentence, but observes that his salient factor score will be affected by this "conclusion," and that his evaluation for parole release will be affected adversely.

Fed.R.Crim.P. 32(c)(3)(D) provides:

> If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the pre-sentence investigation report or the summary of the report or parts thereof, the court shall as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing.

But here the district court noted that the matter under parole guideline data appeared beneath a paragraph styled "Evaluation" and he concluded that what Lucero had done was "exactly that." The trial court was aware the language at issue was merely the assessment of Lucero and not a matter requiring any factual "finding" (in appellant's terminology, "ruling"). He declared it nonbinding either upon himself as judge or upon the Parole Commission.

The decision of the district court is

AFFIRMED.

---

**3.** Whatever relevance this passage in *Huddleston v. U.S.*, —— U.S. ——, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988) might otherwise have had, we observe that at no juncture did Picon rely upon or even cite the pertinent language. Picon's reply brief, which followed release of the *Huddleston* opinion by the Supreme Court, is silent on exactly this point. Although not at issue in this case, our decision regarding the Louisiana stops and Picon turns upon harmless error rather than waiver grounds.