**UNITED STATES of America, Appellee,**

v.

**George A. INSERRA; John Inserra and John Giura, Defendants,**

**Dennis Giorgi, Defendant–Appellant.**

**Nos. 1627, 1628, Dockets 93–1658, 93–1659.**

United States Court of Appeals, Second Circuit.

Argued May 19, 1994.

Decided September 1, 1994.

John J. Brunetti, Syracuse, NY, for defendant-appellant.

Joseph A. Pavone, Asst. U.S. Atty., Syracuse, NY (Gary L. Sharpe, U.S. Atty., N.D.N.Y., Kevin E. McCormack, Asst. U.S. Atty., of counsel), for appellee.

Before: LUMBARD, MESKILL and MINER, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant Dennis Giorgi appeals from a judgment of conviction and sentence entered on September 21, 1993 in the United States District Court for the Northern District of New York (Munson, J.), after a jury trial, convicting him of two counts of making a false statement in a matter within the jurisdiction of a department or agency of the United States, in violation of 18 U.S.C. § 1001. The district court sentenced Giorgi to concurrent eight-month prison terms and imposed a $100 special assessment. Giorgi also appeals from a judgment revoking his probation on a 1989 conviction for tax evasion and sentencing him to a four-month prison term for the underlying tax evasion offense consecutive to the eight-month sentence. On appeal, Giorgi raises numerous challenges to his conviction and revocation of probation, including (1) the inapplicability of section 1001 to the false statements made in this case, (2) the erroneous admission of evidence, and (3) the impropriety of the court's reasonable doubt instruction. For the reasons that follow, we affirm.

## BACKGROUND

Giorgi was convicted in 1989 of various offenses in connection with a scheme to defraud a local teamsters' union and its pension fund. These offenses included participating in a RICO conspiracy, in violation of 18 U.S.C. § 1962(d), soliciting and conspiring to solicit kickbacks in connection with the pension fund, in violation of 18 U.S.C. § 1954, tax evasion, in violation of 26 U.S.C. § 7201, and making false statements to the United States Department of Labor, in violation of 18 U.S.C. § 1001. The section 1001 violation involved an oral misrepresentation made by Giorgi to a Labor Department investigator.

In June of 1989, Giorgi was sentenced to an eighteen-month prison term and fined $10,000 on the RICO count. On the section 1001 and kickbacks counts, he was sentenced to eighteen-month prison terms to run concurrent with the RICO count. Also, Giorgi was sentenced on the tax evasion count to a one-year-and-one-day prison term and fined $10,000. However, the district court suspended the service of the prison term on this count. Finally, Giorgi was sentenced to a three-year term of probation to follow his release from prison. Included in the conditions of probation were the requirements that Giorgi "refrain from violation of any law (federal, state or local)" and "follow the probation officer's instructions and report as directed." Special conditions of probation also required Giorgi to pay the total $20,000 fine within six months of the commencement of probation.

In an indictment filed on May 6, 1993, Giorgi was charged with three counts of making false statements and representations, in violation of 18 U.S.C. § 1001. Each of the counts in the indictment alleged that the statements were made as to "a matter within the jurisdiction of the United States Probation Office for the Northern District of New York, an agency of the United States." According to the allegations in the indictment, Giorgi falsified his monthly probation supervision reports in March, April and May of 1992 by indicating that he neither owned nor drove any vehicles, when, in fact, he both owned and drove a 1978 Porsche worth $25,-000.

At trial, the Government produced substantial evidence demonstrating that Giorgi had filed false reports with the Probation Office regarding his ownership and operation of a motor vehicle. Three Probation Officers, Deputy Chief Probation Officer Paul DeFelice, Deputy Probation Officer Kathryn Warner and Deputy Probation Officer Ronald Hess, testified about their supervision of Giorgi and the requirement that probationers submit a monthly probation report known as a "Probation Form 8." The Government also introduced certain documentary evidence, including the Conditions of Probation document signed by Giorgi prior to his release from prison in 1990 and the three Probation Form 8 reports submitted by Giorgi for the months of March, April and May 1992. Each of the reports required Giorgi to "list all vehicles owned or driven by [the defendant]." On the March form Giorgi listed "N/A" and on the April and May forms he listed "None." The indictment and judgment from the 1989 case also were introduced by the Government.

The Government produced five witnesses who testified that Giorgi owned or drove a 1978 Porsche before and during the time in question. In particular, Yvonne Kelly testified about a meeting that she and her husband had with Giorgi in January of 1992. The purpose of the meeting, according to Kelly, was to discuss "a land deal that kind of went sour." During the meeting, Giorgi informed the Kellys that "he owned a very expensive sports car" and that "he had it stashed in a garage somewhere because he couldn't have ownership of it because of the fact that he had a problem with taxes, or something like that." Upon prompting by the prosecutor, Kelly explained that while she and her husband had invested $18,000 in a partnership with Giorgi to purchase a piece of property adjacent to Kelly's lumber yard, they had nothing to show for it.

Giorgi did not testify in his own defense but called three witnesses. John Gorea, general manager of the car dealership where Giorgi worked during the time in question, testified that the Porsche was listed in the dealership registry. Special Agent William F. Yetman, Jr. of the Federal Bureau of

Investigation described his investigation of Giorgi. Deputy Probation Officer Lori Albright testified about her supervision of Giorgi as a probationer and described certain United States Probation Office procedures.

After the presentation of evidence, the district court instructed the jury. In its instructions on the issue of reasonable doubt, the court stated that "[i]f you as a jury view the evidence in the case as reasonably permitting either of two conclusions, one of innocence, the other of guilt, you as a jury should, of course, adopt the conclusion of innocence." On July 22, 1993, the jury convicted Giorgi on all three counts. The district court later dismissed Count 1 of the Indictment on August 3, 1993 for insufficient evidence, having determined that the response of "N/A" on the March 1992 probation report did not constitute a false statement or representation under section 1001. On August 4, the Probation Office filed a petition for revocation of Giorgi's probation on the 1989 tax evasion conviction.

On September 21, 1993, the district court sentenced Giorgi to concurrent eight-month terms of imprisonment on the section 1001 counts and imposed a $100 special assessment. Immediately following the sentencing hearing, the court held a probation revocation hearing. The court found that Giorgi had violated Condition 1 of the Conditions of Probation imposed after his 1989 conviction by his "failure to 'refrain from violation of any law', which is evidenced by [his] July 22, 1993 conviction of Counts 2 and 3 of Indictment 93–CR–152, both charging Making False Statements." The court revoked Giorgi's probation and imposed a four-month prison term consecutive to the eight-month prison term for the section 1001 violations and ordered that the $10,000 fine on the tax evasion count be paid immediately.

## DISCUSSION

*1. Submission of False Statements and 18 U.S.C. § 1001*

Giorgi asserts that he did not make false statements in a "matter within the jurisdiction of any department or agency of the United States" within the meaning of 18 U.S.C. § 1001. He first argues that the United States Probation Office for the Northern District of New York is not a "department or agency." We disagree.

■ The terms "department" and "agency," as used in Title 18, are defined in section 6 as follows:

The term "department" means one of the executive departments enumerated in section 1 of Title 5, unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government.

The term "agency" includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.

18 U.S.C. § 6. It is clear that the terms "department" and "agency" in the context of section 1001 include all three branches of the government. *See United States v. Bramblett,* 348 U.S. 503, 509–10, 75 S.Ct. 504, 508, 99 L.Ed. 594 (1955). Moreover, in addressing section 1001 the Supreme Court has admonished that the statutory language "calls for an unrestricted interpretation," *id.* at 509, and that it should not be given a narrow or technical meaning, *see United States v. Rodgers,* 466 U.S. 475, 480, 104 S.Ct. 1942, 1946, 80 L.Ed.2d 492 (1984). Indeed, "[s]ection 1001 is a statute of general applicability, designed to protect a 'myriad [of] governmental activities.'" *United States v. Hansen,* 772 F.2d 940, 943 (D.C.Cir.1985) (Scalia, J.) (quoting *Rodgers,* 466 U.S. at 480, 104 S.Ct. at 1946); *see United States v. Gilliland,* 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598 (1941) (section 1001 designed "to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described").

The statute has been applied in cases involving the jurisdiction of many different governmental entities. *See, e.g., Hansen,* 772 F.2d at 943 (congressional committee is department within meaning of section 1001); *Brethauer v. United States,* 333 F.2d 302,

304–05 (8th Cir.1964) (Armed Forces Post Exchange is agency within meaning of section 1001); *United States v. Clarridge*, 811 F.Supp. 697, 710 (D.D.C.1992) (special review board to review activities of National Security Council is agency within meaning of section 1001). Accordingly, there is no reason why false statements made to a United States Probation Office should not be subject to prosecution under section 1001. *See United States v. Allen*, 13 F.3d 105 (4th Cir.1993) (affirming § 1001 conviction where false statements were made within jurisdiction of United States Probation Office); *United States v. Gonzalez–Mares*, 752 F.2d 1485 (9th Cir.) (affirming § 1001 conviction based on false statements made to probation officer in presentence interview), *cert. denied*, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985).

■ The United States Probation Office is established pursuant to the direction of Congress as an arm of the United States District Court. *See* 18 U.S.C. § 3602(a) ("district court ... shall appoint qualified persons to serve .... as probation officers within the jurisdiction and under the direction of the court making the appointment"). In light of this, it is reasonable to view the United States Probation Office itself as a legally constituted arm of the judicial branch. As noted earlier, the judiciary constitutes a department within the meaning of sections 6 and 1001. Given the definitions provided in section 6 and both the unrestricted interpretation and broad applicability of section 1001, it appears obvious to us that false statements made to a United States Probation Office are subject to prosecution under the provisions of section 1001.

Giorgi next argues that the statements in question were submitted in the course of the district court's adjudicative functions and are thus not subject to the reach of section 1001. As we stated earlier, it is clear that the proscription of section 1001 extends to matters involving all three branches of the government. Nevertheless, the statute's application is somewhat circumscribed in matters involving the judicial branch. Many courts have limited the reach of section 1001 in matters involving the judicial branch to false statements made in the context of adminis-

trative or housekeeping functions. *See, e.g., United States v. Holmes*, 840 F.2d 246, 248 (4th Cir.), *cert. denied*, 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988); *Morgan v. United States*, 309 F.2d 234, 237 (D.C.Cir. 1962), *cert. denied*, 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416 (1963). *But see United States v. Hubbard*, 16 F.3d 694, 701 (6th Cir.1994) (refusing to adopt adjudicative function exception). In *United States v. Masterpol*, 940 F.2d 760, 764–66 (2d Cir. 1991), we likewise recognized the limited reach of section 1001 and adopted the "adjudicative function exception" to the use of section 1001, holding that section 1001 does not apply to statements made to a court acting in its judicial capacity.

■ Relying on *Masterpol*, Giorgi claims that the false statements attributed to him fall within the adjudicative function exception. In *Masterpol*, the false statements were made in a letter to the district court for consideration at the time of sentencing. This Court reversed the defendant's conviction, concluding that a sentencing hearing is an adjudicative function. 940 F.2d at 766. Giorgi argues that the false statements in this case were not made in an administrative context because the court was acting in a judicial capacity in ascertaining whether Giorgi should have the right to continued liberty. However, there is a clear distinction between statements made to a sentencing court and those made to the Probation Office by a probationer. Unlike the role of the court in rendering an appropriate sentence, the duties of a probation officer in supervising a probationer clearly are administrative in nature, *see* 18 U.S.C. § 3603, and have no bearing on the court's adjudicative function, *cf. United States v. Mayer*, 775 F.2d 1387, 1391 (9th Cir.1985) (per curiam) (noting that statement made to probation officer during presentence interview does not fall within adjudicative function exception because interview itself was not adjudicative). Accordingly, the false statements made by Giorgi to the Probation Office do not fall within the adjudicative function exception and are subject to prosecution under the provisions of section 1001.

## 2. Evidentiary Issues

### A. Similar Act Evidence

■ Giorgi contends that the district court erred in admitting evidence of his prior section 1001 conviction and allowing Kelly to testify about the real estate deal that "went sour." Rule 404(b) of the Federal Rules of Evidence allows for the admission of similar act evidence for certain purposes, such as proof of intent or knowledge. *See United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993). We follow an inclusionary rule, allowing the admission of such evidence for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence. *See United States v. DeVillio*, 983 F.2d 1185, 1194 (2d Cir.1993). A district court has broad discretion to admit evidence pursuant to Rule 404(b) and we review its ruling only for an abuse of discretion. *United States v. Tarricone*, 996 F.2d 1414, 1422 (2d Cir.1993). We conclude that the district court did not abuse its discretion.

■ We first note that the prior section 1001 conviction was admissible because it was relevant to prove that Giorgi had the requisite state of mind in committing the offense charged. *See Gordon*, 987 F.2d at 908 (Rule 404(b) evidence admissible to infer knowledge or intent where defendant claims his conduct had innocent explanation). Giorgi put in issue his state of mind when defense counsel, in his opening statement, indicated that Giorgi did not intend to conceal his ownership of an asset and that there was an innocent explanation for Giorgi's conduct. According to the attorney, the differing responses on the Probation Form 8s to the question regarding vehicle ownership demonstrated the absence of any "cold, calculated, fraudulent act." The prior conviction therefore provided a reasonable basis for inferring knowledge or intent in contradiction of Giorgi's innocent explanation for his conduct. *See United States v. Aminy*, 15 F.3d 258, 260 (2d Cir.1994). We also disagree with Giorgi's assertion that the prior section 1001 conviction was not sufficiently similar to the present section 1001 charge. *See United States v. Peterson*, 808 F.2d 969, 974 (2d Cir.1987).

Although the prior conviction involved an oral misrepresentation to a labor investigator instead of a written misrepresentation to the Probation Department, these convictions for the same offense were similar enough "to permit the jury reasonably to draw from that act the knowledge inference advocated by the proponent of the evidence." *Id.; see United States v. Affjehei*, 869 F.2d 670, 674 (2d Cir. 1989).

■ Likewise without merit is Giorgi's assertion that the district court erred in failing to exclude Kelly's testimony regarding the details of the January 1992 meeting. "[E]vidence that does not directly establish an element of the offense charged [is admissible] in order to provide background for the events involved in the case." *United States v. Skowronski*, 968 F.2d 242, 246 (2d Cir. 1992). In particular, evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense. *See United States v. Currier*, 821 F.2d 52, 55 (1st Cir.1987); *United States v. Brennan*, 798 F.2d 581, 589 (2d Cir.1986).

■ Here, Kelly's testimony clearly was relevant because Giorgi admitted at the meeting that he owned the Porsche, a contested issue at trial. The discussion of the real estate deal was relevant because it appears that the comment about the car was made to assuage Kelly's concerns about the partnership in that Giorgi had assets to cover her investment. As such, this testimony provided a significant contextual basis for the jury to understand why Giorgi would admit ownership of the Porsche. *See United States v. Fortenberry*, 971 F.2d 717, 721 (11th Cir. 1992) (evidence of defendant's participation in double murder admissible to prove firearm possession count because it was "an integral part of the circumstances surrounding [the illegal weapon possession] and was reasonably necessary to complete the story of the crime"), *cert. denied*, —— U.S. ——, 113 S.Ct. 1020, 122 L.Ed.2d 166 (1993); *United States v. Moore*, 735 F.2d 289, 292 (8th Cir.1984) (per curiam) (evidence that defendant was arrested during drug raid was admissible in

firearm possession trial because the jury was entitled to know the circumstances and background of the criminal charge). Accordingly, we conclude that the district court did not abuse its discretion in allowing Kelly to testify about the circumstances surrounding the meeting with Giorgi. Even if this evidence should have been excluded by the district court, reversal is not required because the evidence of guilt was overwhelming and the admission of this evidence did not substantially influence the jury. *See United States v. Rea,* 958 F.2d 1206, 1220 (2d Cir.1992).

We also reject Giorgi's claim that the court erred by admitting the Rule 404(b) evidence during the Government's case-in-chief. While the admission of similar act evidence to prove intent or knowledge generally should await the conclusion of the defendant's case, *United States v. Colon,* 880 F.2d 650, 660 (2d Cir.1989), such evidence is admissible during the Government's case-in-chief if it is apparent that the defendant will dispute that issue, *see United States v. Zackson,* 12 F.3d 1178, 1183 (2d Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 2717, 129 L.Ed.2d 842 (1994); *United States v. Pitre,* 960 F.2d 1112, 1120 (2d Cir.1992); *United States v. Mills,* 895 F.2d 897, 907 (2d Cir.), *cert. denied,* 495 U.S. 951, 110 S.Ct. 2216, 109 L.Ed.2d 541 (1990). Giorgi's opening statement clearly demonstrated that the issue would be disputed, asking the jury "to think of how they are going to prove the intent of Mr. Giorgi" and concluding that "what you have is a form [with] which Dennis Giorgi did not have specific intent to defraud the Government." Accordingly, this evidence offered to prove Giorgi's intent properly was admitted during the Government's case-in-chief.

### B. Monthly Probation Reports

Giorgi also contends that the Probation Form 8 reports for March, April and May of 1992, filed with the Probation

Office, erroneously were admitted in evidence because they were not linked to him. We disagree. Under Fed.R.Evid. 901(a), which governs the requirement of authentication and identification for admissibility, "the Government 'need only prove a rational basis from which the jury may conclude that the exhibit did, in fact, belong to the appellant[ ].'" *United States v. Serna,* 799 F.2d 842, 850 (2d Cir.1986) (quoting *United States v. Natale,* 526 F.2d 1160, 1173 (2d Cir.1975), *cert. denied,* 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976)) (alteration in *Serna*), *cert. denied,* 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 494 (1987). Here, Deputy Chief Probation Officer DeFelice testified that he was personally familiar with Giorgi and specifically connected those reports to him, noting that they had been retrieved from Giorgi's file. Thus, his testimony sufficiently connected the exhibits to Giorgi to warrant their submission to the jury. *See* Fed.R.Evid. 901(b)(1) (testimony of witness with knowledge satisfies authentication requirement of Rule 901(a)).

In addition, Giorgi raises a hearsay challenge to the admission of the monthly probation reports, claiming that "[t]he hearsay problem arises in connection with whether or not [he] engaged in the non-verbal conduct of proffering or submitting the form." Although we find it difficult to discern the exact basis for Giorgi's hearsay objection as it pertains to "non-verbal conduct," any such claim nevertheless must fail.[1] Even if we assume that the act of submitting the reports to the Probation Office was a statement offered for the truth of the matter asserted, *see* Fed.R.Evid. 801(a)(2), (c), such conduct by Giorgi would not constitute hearsay because it was an admission by a party-opponent, *see* Fed.R.Evid. 801(d)(2)(A); *see also In re Grand Jury Matter,* 768 F.2d 525, 531 n. 5 (3d Cir.1985) (in banc) (Becker, J., concurring), *overruled on other grounds,*

---

**1.** We note that Giorgi objected to the admission of the reports at trial only on the ground of authenticity. He did not raise a hearsay objection. Accordingly, he failed to preserve that claim for appeal, *see, e.g., United States v. Mendoza-Salgado,* 964 F.2d 993, 1008 (10th Cir.1992) ("On appeal, the specific ground for reversal on

an evidentiary ruling must mirror the objection raised at trial."); *United States v. Manso-Portes,* 867 F.2d 422, 426 (7th Cir.1989) ("The specific premise for reversing upon appeal an evidentiary ruling must be the same premise as that declared properly in the objection during trial."), and we review it only for plain error.

*United States v. Braswell*, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988).

### 3. "Two–Inference" Jury Charge

■ The Government concedes that the "two-inference" jury instruction on reasonable doubt was improper. The instruction explained that where the evidence reasonably permitted a finding of both innocence and guilt, the jury should adopt the conclusion of innocence. We repeatedly have emphasized that such a charge is improper because it "may mislead a jury into thinking that the government's burden is somehow less than proof beyond a reasonable doubt." *United States v. Khan*, 821 F.2d 90, 93 (2d Cir.1987); *accord United States v. Attanasio*, 870 F.2d 809, 818 (2d Cir.1989). Nevertheless, we review the district court's reasonable doubt instruction to determine whether the instruction as a whole properly conveyed the concept of reasonable doubt to the jury. *Victor v. Nebraska*, — U.S. —, —, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994); *see Khan*, 821 F.2d at 92. We conclude that the instruction in this case satisfies this standard. The court instructed the jury on the meaning of reasonable doubt and emphasized several times that the Government had the burden of proving Giorgi's guilt beyond a reasonable doubt and that Giorgi was presumed innocent. *See Attanasio*, 870 F.2d at 818; *Khan*, 821 F.2d at 92. Moreover, the court reiterated the Government's burden immediately before and after the two-inference instruction was given. *See Attanasio*, 870 F.2d at 818. Accordingly, the court's entire charge shows that it "fairly conveyed to the jury the concept of proof beyond a reasonable doubt." *Khan*, 821 F.2d at 92.

### 4. Giorgi's Other Arguments

Giorgi raises various other arguments in challenging his conviction. We have reviewed these arguments and find them to be without merit.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

LUMBARD, Circuit Judge, concurring:

I concur in Judge Miner's opinion affirming the conviction. However, I believe the district court should not have admitted into evidence Giorgi's prior conviction under section 1001. I think that the prior conviction has but the slightest, if any, probative value with respect to Giorgi's intent, knowledge or state of mind in the present case, especially as compared to the potential for unfair prejudice. Giorgi had made a prior oral representation to a special agent of the Department of Labor that he was a graduate of the Syracuse University Law School, whereas he knew that he never even attended the school. Here, he indicated on the form to his probation officer that he did not own a car, whereas he knew he owned a Porsche. The contents, modes of delivery, recipients, and contexts of the false statements are entirely different. The simple fact that the type of crime is the same—misrepresentation to a government department or agency—is not a sufficient similarity. *See United States v. Gordon*, 987 F.2d 902, 908–09 (2d Cir.1993).

Nevertheless, I believe the admission of the prior conviction was harmless error. Even absent this evidence, the other evidence presented in the case was so clear and overwhelming that the jury would most likely have found the defendant guilty anyway.