09-4362-cr
USA v. Greer

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2010

(Argued: November 2, 2010          Decided: February 4, 2011)

Docket No. 09-4362-cr

--------------------------------------------------------x

UNITED STATES OF AMERICA,

          Appellee,

                    -- v. --

MICHAEL GREER,

          Defendant-Appellant.

--------------------------------------------------------x

B e f o r e :  WALKER and CABRANES, Circuit Judges, and KOELTL,[*] District Judge.

Appeal from a judgment of conviction for possessing a firearm and ammunition as a convicted felon, following a jury trial in the Western District of New York (David G. Larimer, Judge). Defendant-Appellant Michael Greer argues that the government violated his right against self-incrimination by using the name tattooed on his arm to link him to the car in which

---

[*]     The Honorable John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

ammunition was found.  We hold that the nature of the government's reliance on the content of Greer's tattoo made it testimonial, but we conclude that no constitutional violation occurred because the tattoo was not the product of government compulsion.  We reject Greer's remaining arguments as without merit.

AFFIRMED.

ARZA FELDMAN, Feldman and Feldman, Uniondale, New York, for Defendant-Appellant.

STEPHAN J. BACZYNSKI, Assistant United States Attorney (William J. Hochul, Jr., United States Attorney for the Western District of New York, on the brief), Buffalo, New York, for Appellee.

JOHN M. WALKER, JR., Circuit Judge:

Defendant-Appellant Michael Greer appeals from a judgment of conviction for possessing a firearm and ammunition as a convicted felon, following a jury trial in the Western District of New York (David G. Larimer, Judge).  Greer argues that the government violated his right against self-incrimination by using the name tattooed on his arm to link him to the car in which ammunition was found.  We hold that, although the nature of the government's reliance on the content of Greer's tattoo made it testimonial, the Fifth Amendment was not offended because his tattoo was not the product of government compulsion.  We also reject Greer's arguments that the evidence was insufficient to support the

2

conviction and that the district court improperly permitted the jury to hear evidence of an uncharged crime.

**BACKGROUND**

Greer's arrest was precipitated by a tip from a confidential informant, Aaron Stubbs, who had agreed in an unrelated plea bargain to assist in police investigations. Greer had previously been convicted of a felony, and federal law prohibits convicted felons from possessing a firearm or ammunition. 18 U.S.C. § 922(g)(1). Stubbs had once seen Greer with a gun, and on August 17, 2007, as a ruse to turn him into police for gun possession, Stubbs proposed that they rob a house. Stubbs told Greer that they would need a gun, and Greer replied that he could get one.

The pair drove to Greer's house. As Greer went inside, Stubbs remained in the car and called Rochester, New York Detective Tom Janus, who drove to the location in an unmarked car. Detective Janus saw Stubbs sitting in the passenger seat of a light blue Hyundai Sonata, and then watched Greer leave his house and get into the driver's seat of the same car. When the vehicle drove past him, Detective Janus contacted other officers to continue surveillance as he remained in place.

Two other officers observed the car at different times later that day. Officer Kevin Koehn watched the Sonata approach, made

eye contact with Greer as he drove past, and communicated Greer's position over the radio. Sergeant Beth Laird later pulled the Sonata over, but it sped away before she could see the driver. Police next found the Sonata, now unoccupied, in a parking lot on a residential street in Rochester, where it had struck an adjacent car. Around the same time, nearby resident Ebony Gibson saw a man come through the front door of her apartment, run through the apartment, and, as she testified, leave by the back door. She and her sister immediately fled through the front door.

Witnesses in the parking lot directed police officers to Gibson's apartment. Sergeant Laird spoke to Gibson and, with her consent, a team of officers entered and searched the premises. Separately, a police dog tracked a scent from the driver's side of the Sonata into the apartment. Police discovered Greer on a bed in an upstairs bedroom and took him into custody. Police found a Glock Model 22 semi-automatic pistol and a set of car keys in a white garbage can near the entrance to the apartment.

Detective Janus arrived at the scene and peered into the Sonata, where he saw the magazine of a semi-automatic handgun in the cup holder between the front seats. After obtaining a search warrant, Detective Janus opened the Sonata's door using the key found in the trash can. He retrieved the ammunition magazine, which contained nine bullets and fit the Glock 22 from the

4

garbage can.  He also found a pay stub and a receipt for a motor vehicle fine, both with Greer's name on them, as well as a car rental agreement in the name of "Tangela Hudson."  Once Greer was apprehended, Detective Janus observed that a tattoo on his left arm said "Tangela."

On May 28, 2009, a jury found Greer guilty of one count of possessing a firearm and ammunition as a convicted felon.  Judge Larimer entered the judgment on October 15, 2009, after sentencing Greer to 120 months in prison on the weapons-possession count and to a concurrent 18-month term for violating his supervised release.  This appeal followed.

**DISCUSSION**

On appeal, Greer makes three arguments for reversing his conviction: first, that the government violated his Fifth Amendment right against self-incrimination by relying on his tattoo to connect him to the car in which the ammunition was found; second, that the evidence was insufficient to prove his constructive possession of the gun and ammunition; and, finally, that he was unduly prejudiced by testimony regarding an uncharged crime.  We hold that, although the nature of the government's reliance on the tattoo's content made it testimonial, the Fifth Amendment was not offended because the tattoo was not the product of compulsion.  We also reject Greer's remaining arguments.

**I.   Right Against Self-Incrimination**

At trial, the government asked Detective Janus on direct examination to describe Greer's physical appearance on the date of his arrest.  When Detective Janus replied that he saw Greer "had tattoos," the government inquired whether he remembered "what, if anything, any of the tattoos said."  Detective Janus responded, "I recall a tattoo, I believe it was on his left arm, that said 'Tangela.'"  Detective Janus had earlier testified to finding a rental car agreement in the name of "Tangela Hudson" in the Sonata.  At trial, Greer did not object to this colloquy.

On appeal, Greer argues for the first time that the solicitation of testimony regarding his tattoo violated his right against self-incrimination.  A claim of error not raised before the district court is subject to plain error review.  United States v. Morris, 350 F.3d 32, 36 (2d Cir. 2003).  We will only reverse for plain error if there was "1) an error; 2) that was plain; 3) that affected defendant's substantial rights; and 4) that seriously affected the fairness, integrity or public reputation of judicial proceedings."  Id. (quotation marks and alterations omitted).

The Fifth Amendment provides in part that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The right against self-incrimination bars only "compelled incriminating

6

communications . . . that are 'testimonial' in character." United States v. Hubbell, 530 U.S. 27, 34 (2000). In other words, to qualify for Fifth Amendment protection, a communication must be (1) testimonial, (2) incriminating, and (3) compelled. Hiibel v. Sixth Judicial Dist. Court, 542 U.S. 177, 189 (2004).

The government argues that the tattoo in this case was not "testimonial." We disagree. Whether a communication is testimonial for Fifth Amendment purposes "often depends on the facts and circumstances of the particular case." Doe v. United States, 487 U.S. 201, 214-15 (1988). "[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information. Only then is a person compelled to be a 'witness' against himself." Id. at 210.

The privilege does not protect a criminal suspect from being compelled to exhibit physical characteristics, for example, "to put on a shirt, to provide a blood sample or handwriting exemplar, or to make a recording of his voice." Hubbell, 530 U.S. at 35 (footnotes omitted). Such acts are not testimonial. It is "the contents of [the defendant's] own mind . . . that implicate[] the Self-Incrimination Clause." Doe, 487 U.S. at 211 (citations and quotation marks omitted). Because the exhibition of physical traits is not a "communication by a witness that relates either express or implied assertions of fact or belief,"

7

it does not enjoy constitutional protection. Hubbell, 530 U.S. at 35; see also Schmerber v. California, 384 U.S. 757, 764 (1966) ("[C]ompulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate [the Fifth Amendment]."). For that reason, the Fifth Amendment is not offended where a witness relies on a tattoo to identify a defendant. See, e.g., United States v. McCarthy, 473 F.2d 300, 304-05 n.3 (2d Cir. 1972). In that context the tattoo is a physical feature, no different from a handwriting or blood sample, or a scar. "A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside [Fifth Amendment] protection." Gilbert v. California, 388 U.S. 263, 266-67 (1967).

Here, the tattoo was used to a very different end. Detective Janus did not describe Greer's tattoo to identify Greer. Rather, the content of Greer's tattoo, the name "Tangela," was elicited because Greer's statement of the name on his skin tended to prove that Greer had a relationship with a person of that name. That fact, in combination with other evidence, allowed jurors to infer that Greer had constructive possession of the ammunition found in the Sonata rented by a Tangela Hudson. See United States v. Gaines, 295 F.3d 293, 300 (2d Cir. 2002). The government relied on the tattoo not as an "identifying physical characteristic" but for the "content of

8

what [was] written." Gilbert, 388 U.S. at 266-67. The tattoo was therefore testimonial and, because it linked Greer to the ammunition, incriminating. See Hiibel, 542 U.S. at 190 (characterizing as incriminating only those "disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used").

The tattoo, however, was not compelled by the government. Detective Janus testified that he observed the tattoo on Greer's arm after his arrest. No evidence supports Greer's contention on appeal that officers were able to read the tattoo only by applying physical force during his arrest. And, even if that were true, it would still not amount to compulsion for Fifth Amendment purposes. The Supreme Court has held that, where the IRS compelled production of voluntarily prepared papers via summons, the taxpayer could not avoid compliance "by asserting that the item of evidence which he is required to produce contains incriminating writing." Fisher v. United States, 425 U.S. 391, 410 (1976). Since "the preparation of all of the papers . . . was wholly voluntary," they could not "be said to contain compelled testimonial evidence." Id. at 409-10. The voluntary tattooing of an incriminating word to Greer's arm was, like the voluntary preparation of documents, not the product of government compulsion. In the absence of compulsion, Greer's

9

Fifth Amendment claim fails.  The admission of the testimony of Detective Janus regarding Greer's tattoo was not error, much less plain error.

## II.  Sufficiency of the Evidence

Greer argues that his conviction for weapon possession should be overturned because the evidence was insufficient to support it.  The district court denied Greer's motion for acquittal under Federal Rule of Criminal Procedure 29, a decision that we review de novo.  United States v. Bullock, 550 F.3d 247, 251 (2d Cir. 2008).  We will not disturb the conviction if, viewing the evidence in the light most favorable to the government, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Xiao Qin Zhou, 428 F.3d 361, 370 (2d Cir. 2005) (quoting United States v. Bruno, 383 F.3d 65, 82 (2d Cir. 2004)).

Greer contends that the government's case relied on nothing more than a "series of hunches" insufficient to sustain the jury's verdict.  We disagree.  Drawing the reasonable inferences in the government's favor, as we must, we find the evidence more than sufficient to sustain the conviction.  The ammunition clip was left next to the driver's seat of a Sonata that Greer had been seen driving.  The car was rented by Greer's girlfriend, contained a pay stub and receipt in Greer's name, and was found

10

outside the apartment into which he fled.  In a trash can by the entrance to the same apartment, police recovered keys to the Sonata along with a gun that matched the ammunition clip. Furthermore, Stubbs testified to having seen Greer with the gun, and explained that Greer had armed himself on that day at Stubbs's suggestion.  This evidence could easily convince a rational jury, beyond a reasonable doubt, that Greer had "the power and intention to exercise dominion and control over" the gun and the ammunition.  United States v. Gaines, 295 F.3d 293, 300 (2d Cir. 2002) (quoting United States v. Payton, 159 F.3d 49, 56 (2d Cir. 1998)).

**III. Evidence of Uncharged Crime**

Greer challenges the district court's denial of his motion to exclude testimony regarding the robbery he planned with Stubbs.  Although evidence of other crimes "is not admissible to prove the character of a person in order to show action in conformity therewith," it can be used "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b).  The Second Circuit's "inclusionary rule" allows the admission of such evidence "for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test

11

of Rule 403 of the Federal Rules of Evidence." United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994). The district court acknowledged the possibility of prejudice to Greer but allowed the evidence after concluding that it "does show motive, intent, absence of mistake, and some plan."

We review a decision on admission of evidence for abuse of discretion, id., which we will only find if the district court "acted arbitrarily and irrationally," United States v. Garcia, 291 F.3d 127, 136 (2d Cir. 2002) (quoting United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992)). If the district court abused its discretion, we apply harmless error analysis. United States v. Rea, 958 F.2d 1206, 1219-20 (2d Cir. 1992). Greer argues that the district court erred in allowing Stubbs to testify about their intended robbery, asserting that the testimony showed neither motive nor intent and that, if it did, its probative value was outweighed by unfair prejudice.

The district court did not abuse its discretion. Evidence of the proposed robbery was not constrained by Rule 404(b) because it was "necessary to complete the story of the crime on trial." United States v. Kaiser, 609 F.3d 556, 570 (2d Cir. 2010) (quoting United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000)). Moreover, Stubbs's testimony fits easily within the Second Circuit's Rule 404(b) inclusionary rule because it explains why Greer procured the firearm. And the district court

12

acted well within its "broad discretion" in finding that the probative value of the evidence outweighed whatever threat of unfair prejudice Greer may have faced.  See <u>United States v. Birney</u>, 686 F.2d 102, 106 (2d Cir. 1982).

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

13