09-4245-cr, 09-4902-cr, 10-991-cr
United States v. Sanchez

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 5ᵗʰ day of April, two thousand eleven.

PRESENT: JOSEPH M. McLAUGHLIN,
    GERARD E. LYNCH,
        *Circuit Judges*,
    JED S. RAKOFF,
        *District Judge*.*

-------------------------------------------------------------------

UNITED STATES OF AMERICA,
      *Appellee*,

    v.        Nos. 09-4245-cr, 09-4902-cr, 10-991-cr

ROBERTO SANCHEZ, MILTON SAMUELS, LENROY McLEAN, aka
Officer/Department of Correction Dean,
      *Defendants-Appellants*.

-------------------------------------------------------------------

FOR APPELLANTS:  JOHN A. CIRANDO (Bradley E. Keem, Elizabeth deV. Moeller, Vicki Jo Beighley, *on the brief*), D.J. & J.A. Cirando, Esqs., Syracuse, New York, *for* Roberto Sanchez.

        D. CRAIG HUGHES, Houston, Texas, *for* Milton Samuels.

---

 * The Honorable Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

B. ALAN SEIDLER, New York, New York, *for* Lenroy McLean.

FOR APPELLEE: RANDALL W. JACKSON, Assistant United States Attorney (Jesse M. Furman, Assistant United States Attorney, *on the brief*) *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

Appeal from the United States District Court for the Southern District of New York (Richard J. Sullivan, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgments of the district court are AFFIRMED.

These consolidated appeals arise from the 2008 investigation and prosecution of a major cocaine distribution ring that operated out of New York and New Jersey. Roberto Sanchez pleaded guilty to conspiring to distribute cocaine, see 21 U.S.C. § 846, and was sentenced to 240 months' incarceration, 60 months' supervised release, and a fine of one million dollars. A jury convicted Milton Samuels and Lenroy McLean of the same conspiracy charge and also convicted Samuels of possessing a firearm during and in relation to a drug trafficking crime. See 18 U.S.C. § 924(c)(1)(A)(i). Samuels was sentenced to 276 months' incarceration, supervised release for life, and forfeiture of six million dollars, and McLean to 228 months' incarceration and 60 months' supervised release. All three appeal.

I.     Trial Issues

Samuels and McLean contest the sufficiency of the evidence supporting their convictions. "We will not disturb the conviction[s] if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential

2

elements of the crime[s] beyond a reasonable doubt." United States v. Greer, 631 F.3d 608, 613 (2d Cir. 2011) (quotation marks omitted). That standard is amply satisfied here. In addition to other evidence, a witness testified directly to their involvement in the conspiracy and to the foreseeable quantity of drugs connected with it. This testimony is enough to sustain their convictions, despite the appellants' attack on the credibility of the witness, because on a sufficiency challenge "we defer to the jury's assessment of witness credibility." See United States v. Glenn, 312 F.3d 58, 64 (2d Cir. 2002) (quotation marks omitted). Samuels's argument that the government overstated the value of his jewelry is beside the point, since his jewelry (expensive even at his lower valuation) served only as corroboration of the other evidence against him. The same goes for the cell-phone tower evidence that McLean attacks. The jury did not stray in finding guilt beyond a reasonable doubt.

Samuels argues that the district court should have suppressed weapons and other evidence found when the police searched the homes of his father and former girlfriend. But the district court found, after a hearing, that Samuels consented to the search of both places. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). On appeal, Samuels argues that the law enforcement officers provided "contradictory" testimony and calls his consent "questionable," but points to no evidence to solidify these nebulous accusations and nothing to show that the district court clearly erred in finding consent. He mentions the officers' suggestion that they would get a warrant if he refused consent, but such a suggestion does not render consent involuntary. See United States v. Calvente, 722 F.2d

3

1019, 1023 (2d Cir. 1983). Unlike in <u>Bumper v. North Carolina</u>, 391 U.S. 543, 546-48 (1968), the officers did not falsely tell Samuels that they already had a warrant. Furthermore, Samuels's own affidavit disclaimed any expectation of privacy in his ex-girlfriend's apartment, stating that he "do[es] not live" there, "never lived" there, and "did not have control or authority over her home and could not enter her home without her permission." He therefore may not challenge the search of that home. <u>See</u> <u>Rawlings v. Kentucky</u>, 448 U.S. 98, 104 (1980).

Samuels argues that venue on his § 924(c) weapons charge was not proper in the Southern District of New York because no one testified to seeing him possess or use the weapons in that district. <u>See</u> U.S. Const. art. iii, § 2, cl. 3; Fed. R. Crim. P. 18. This claim fails as well. First, the Supreme Court has held that § 924(c) charges based on a continuing crime of violence may be tried in any district where the crime of violence occurred, regardless of whether the related firearm possession occurred in that district. <u>See</u> <u>United States v. Rodriguez-Moreno</u>, 526 U.S. 275, 282 (1999). We have applied the logic of <u>Rodriguez-Moreno</u> to narcotics distribution conspiracies as well. <u>See</u> <u>United States v. Payne</u>, 591 F.3d 46, 69 (2d Cir. 2010). Second, even if <u>Rodriguez-Moreno</u> did not apply here, Samuels's argument would fail because the jury could have concluded that he possessed relevant firearms in the Southern District. He testified that he kept two guns where he lived in Yonkers, New York, which is part of the Southern District. He also testified that he had an AK-47 at his ex-girlfriend's apartment on Long Island. The jury could reasonably infer that Samuels would have traveled through the Southern

4

District to transport anything from that apartment to New Jersey, where a witness saw him bear such a firearm to protect the conspiracy. A rational jury therefore could have concluded that he possessed a firearm in the Southern District during and in relation to a drug trafficking conspiracy, or that he possessed one during and in relation to a drug trafficking conspiracy that occurred in the Southern District, or both.

Samuels also raises a claim under the Speedy Trial Act. That Act, however, provides that "[f]ailure of the defendant to move for dismissal prior to trial . . . shall constitute waiver of the right to dismissal." 18 U.S.C. § 3162(a); see Zedner v. United States, 547 U.S. 489, 502 (2006). Because Samuels failed to raise this issue before trial, he has waived it.

II.     Sentencing Issues

The three appellants raise various challenges to their sentences. Sanchez argues that the district court erred in applying a four-level enhancement for his leadership role. See U.S.S.G. § 3B1.1. Sanchez's leadership-role argument, like Samuels's and McLean's sufficiency arguments, relies heavily on discrediting a key government witness. The district court did not clearly err in believing that witness. Sanchez's other arguments on this front – that his boasts of having underlings are "*likely* to have been mere 'puffery'"; that McLean's request to Sanchez "for a 'bigger role in the organization' . . . *can* be read [to mean] that McLean . . . was hoping that appellant would contract out some of his drugs to him on an independent basis" – at most suggest inferences that the district court *could* have drawn, not ones that it clearly erred by refusing to draw.

Sanchez also contests his two-level enhancement he received for possession of a dangerous weapon. See U.S.S.G. § 2D1.1. To support that enhancement, the government does not have to show that Sanchez himself possessed firearms, but only that the gun possession was a "reasonably foreseeable act[] . . . that occurred during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a)(1)(B). It was reasonably foreseeable that Samuels, who provided "muscle" for the conspiracy, would possess a firearm during that conspiracy, and especially so that he would possess one in a potentially dangerous confrontation with the conspiracy's supplier. The district court therefore did not clearly err in applying the firearm enhancement.

Appellants make other sentencing arguments that, like several arguments we have already rejected, require ignoring the testimony of a witness that both the jury and the district court credited. Samuels challenges his three-level role enhancement for being a "manager or supervisor (but not an organizer or leader)" in the conspiracy, U.S.S.G. § 3B1.1(b), even though the witness testified that Samuels had a "crew" and at least once brought his "boys" to the office as "back up" (and even though Sanchez stated in a recorded call that Samuels "is the boss of all of the black guys"). Samuels and McLean both argue that it was clear error to sentence them based on 150 kilograms or more of cocaine, see U.S.S.G. § 2D1.1(c)(1), even though the witness testified that they were both present for discussions about and handling of greater quantities than that. The district court did not clearly err by relying on this evidence to apply these enhancements.

6

Samuels also challenges two other enhancements he received. The district court did not clearly err in finding that he intentionally obstructed justice, see U.S.S.G. § 3C1.1, because Samuels's testimony directly contradicted material evidence on which the jury relied to find him guilty, and involved details of the sort that do not result from "confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993). The district court also did not err in applying an enhancement for use of a firearm, see U.S.S.G. § 2D1.1(b)(1), because the evidence showed Samuels used a firearm, and because Samuels received no additional sentence under § 924(c), due to the district court's reliance on our now-abrogated precedents in United States v. Williams, 558 F.3d 166, 167-68 (2d Cir. 2009), and United States v. Whitley, 529 F.3d 150, 151 (2d Cir. 2008). Even if the district court did err in applying the firearm enhancement, moreover, the passage of time has made such an error harmless; if we remanded, the district court would be required to impose at least a five-year sentence for his separate conviction under § 924(c), running consecutively to "any other term of imprisonment imposed on the offender." 18 U.S.C. § 924(c)(1)(D)(ii); see Abbott v. United States, 131 S. Ct. 18, 23 (2010), United States v. Tejada (Mejia), 631 F.3d 614, 619-20 (2d Cir. 2011). Lowering his offense level by two points could not offset this five-year addition, because his offense level already was two levels beyond the maximum in the sentencing table. Any error with respect to the treatment of the firearms issue was thus beneficial to Samuels.

7

Samuels makes several attacks on the six-million-dollar forfeiture judgment. He argues that the government sought forfeiture only at the last minute, but his indictment included a forfeiture allegation, so he was on notice of the risk of forfeiture more than eight months before sentencing. See Fed. R. Crim. P. 32.2(a). He argues that the district court erred in holding him accountable for the proceeds of the entire conspiracy, but we have long upheld such joint-and-several liability under 21 U.S.C. § 853. See United States v. Benevento, 836 F.2d 129, 130 (2d Cir. 1988). He also argues that the forfeiture constitutes an "excessive fine[]" under the Eighth Amendment (an argument he appears not to have raised below), but, given Samuels's extensive involvement in a conspiracy that imported and distributed many hundreds of kilograms of cocaine, and his use of a weapon and role as "muscle" in that conspiracy, the amount here was not "grossly disproportional to the gravity of his offense." United States v. Bajakajian, 524 U.S. 321, 324 (1998). Finally, he argues it was unfair to impose forfeiture on him when other members of the conspiracy did not suffer similar impositions (though Sanchez did receive a substantial fine). Fair or not, this result was not contrary to the law.

We also reject Samuels's and McLean's arguments that their prison sentences were substantively unreasonable. Samuels argues he should have received a lower sentence in light of the sentences of his co-conspirators, such as Sanchez, who received only 240 months against Samuels's 272 months. But Sanchez was not convicted of violating § 924(c) as Samuels was, Sanchez did not obstruct justice, and Sanchez received credit for accepting responsibility by pleading guilty. In any event, the premise of

8

Samuels's argument fails because a district court does not even have to consider intra-conspiracy disparities, though it may at its discretion. See United States v. Frias, 521 F.3d 229, 236 & n.8 (2d Cir. 2008). McLean's similar substantive-unreasonableness argument also fails. The district judge considered his crime and circumstances and did not abuse its discretion in selecting his sentence. All three appellants received sentences significantly below their applicable Guidelines ranges. These sentences lie well "within the range of permissible decisions." See United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quotation marks omitted).

Sanchez, writing separately *pro se*, argues that judicial fact-finding violates the Fifth and Sixth Amendments. The Supreme Court has specifically allowed such fact-finding, however, so long as it is employed in the service of advisory, rather than mandatory, Sentencing Guidelines. See United States v. Booker, 543 U.S. 220, 245 (2005).

Finally, we decline to reach McLean's contentions that his trial counsel was constitutionally ineffective, which are more appropriately made in a motion under 28 U.S.C. § 2255. See Massaro v. United States, 538 U.S. 500, 504 (2003).

For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:

Catherine O'Hagan Wolfe

9