22-1011-cr
*United States v. Samuels*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of January, two thousand twenty-four.

PRESENT:  Guido Calabresi,
 Steven J. Menashi,
 Myrna Pérez,
  *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

 *Appellee,*

 v.                                                    No. 22-1011

KASHEEN SAMUELS, AKA Kash, AKA JR,

 *Defendant-Appellant.*

_____

*For Appellee*:    CHRISTOPHER D. BRUMWELL, Assistant United States Attorney (Mary E. Bracewell and Stephen J. Ritchin, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

*For Defendant-Appellant*:    JAMES B. SEPLOWITZ (Jason E. Foy, *on the brief*), Foy & Seplowitz LLC, Hackensack, NJ.

Appeal from a judgment of the United States District Court for the Southern District of New York (Ramos, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Kasheen Samuels appeals his conviction for armed robbery and drug trafficking on several grounds. For the reasons that follow, we affirm. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I

Samuels first contends that Counts One through Three of the indictment—which related to the robbery of Robert Bishun in April 2016—should not have been joined with Counts Four through Six, which related to the robbery of Justin Garcia in June 2017, or with Count Seven, which concerned a narcotics conspiracy. "We review the propriety of joinder *de novo*." *United States v. Shellef*, 507 F.3d 82, 96 (2d Cir. 2007). Under Rule 8(a), "[t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—

2

whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "Rule 8(a) is not limited to crimes of the 'same' character but also covers those of 'similar' character, which means 'nearly corresponding; resembling in many respects; somewhat alike; having a general likeness.'" *United States v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980) (alteration omitted) (quoting *Webster's New International Dictionary* (2d ed.)); *see also United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008) ("Counts that have a sufficient logical connection to each other can be tried together, as can those where the same evidence may be used to prove each count.") (internal quotation marks and citation omitted).

The government makes strong arguments that the requirements of Rule 8(a) were met because of similarities between the offenses and overlap of evidence and witnesses. However, we need not decide whether joinder was proper because it was harmless. The evidence of related offenses would have been admissible in each case in any event.

Samuels argues that the district court should have granted his motion for a severance. We have explained that "[a] district court's decision to deny severance is 'virtually unreviewable' and will be overturned only if a defendant can demonstrate prejudice 'so severe that his conviction constituted a miscarriage of justice and that the denial of his motion constituted an abuse of discretion.'" *United States v. Fazio*, 770 F.3d 160, 165-66 (2d Cir. 2014) (quoting *United States v. Stewart*, 433 F.3d 273, 314-15 (2d Cir. 2006)).

Samuels cannot make that showing. He suggests that "the jury was unable to evaluate each alleged crime independently." Appellant's Br. 13. But the district court instructed the jury to consider each charge separately, and the fact that Samuels was acquitted on two counts suggests that the jury followed that instruction. *See Herring v. Meachum*, 11 F.3d 374, 378 (2d Cir. 1993) ("Based on the instructions, the jury seems to have carefully evaluated the evidence on each count

separately; it convicted petitioner on two of the counts, but acquitted him on the other two.").

Given the lack of lack of prejudice, we affirm.

## II

Samuels next argues that the district court improperly admitted "highly prejudicial" evidence of "significant instances of prior uncharged crimes, prior incarceration and irrelevant gang affiliation." Appellant's Br. 13. "We review a decision on admission of evidence for abuse of discretion, which we will only find if the district court acted arbitrarily and irrationally. If the district court abused its discretion, we apply harmless error analysis." *United States v. Greer*, 631 F.3d 608, 614 (2d Cir. 2011) (internal quotation marks and citations omitted).

Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, "[t]he Second Circuit's 'inclusionary rule' allows the admission of such evidence 'for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence.'" *Greer*, 631 F.3d at 614 (quoting *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994)). Moreover, Rule 404(b) has been read to exclude from its scope "evidence of uncharged criminal activity … if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997)).

Even if the district court did not expressly conduct the probative-prejudice balancing, we may do so on appeal. We conclude that the district court correctly admitted evidence of the three uncharged robberies because that evidence served "to inform the jury of the background of the conspiracy charged, to complete the

4

story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed." *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992); *see also United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993) ("We have held repeatedly that it is within the court's discretion to admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators."). Here, the three uncharged robberies involved overlapping personnel with the two charged robberies, and some occurred in close temporal proximity to the charged robberies.

Samuels also challenges the admission of evidence regarding his gang membership. But "courts routinely admit evidence of gang membership … where the evidence is relevant for a proper purpose." *United States v. Williams*, 930 F.3d 44, 63 (2d Cir. 2019). In this case, evidence of Samuels's membership in the Sex Money Murder gang was relevant background information that helped the jury understand Mingo's testimony regarding two of the uncharged robberies; it was Samuels's gang membership that gave him the opportunity to commit these two robberies. If evidence of the uncharged robberies was properly admitted, and it was, then evidence of Samuels's gang membership was also properly admitted. In any event, knowing about Samuels's gang membership could not have meaningfully prejudiced the jury because Samuels's gang membership "did not involve conduct any more sensational or disturbing than the crimes with which [Samuels was] charged." *United States v. Lyle*, 919 F.3d 716, 737 (2d Cir. 2019) (quoting *Pitre*, 960 F.2d at 1120).

We cannot conclude that the challenged evidentiary rulings were "arbitrary and irrational" so as to amount to an abuse of discretion. *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996).

## III

Samuels also argues that the jury instructions regarding felony murder were defective. For purposes of 18 U.S.C. § 924(j), "Murder is the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a); *see also* 18 U.S.C. § 2(a) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."). Samuels takes issue with the instruction that "[t]he government is not required to prove that the defendant, or the person that he aided and abetted, had any premeditated design or intent to kill the victim" and that the government needed only show that the death "occurred as a consequence of and while the defendant, or someone he aided and abetted, was knowingly and willfully committing the crime of robbery." Tr. 1427.

The jury instruction was a straightforward application of the felony murder rule. "One way the government can demonstrate malice aforethought is by showing that the killing was committed in the commission of a robbery; under the traditional common law felony murder rule, the malice of the robbery satisfies murder's malice requirement." *United States v. Thomas*, 34 F.3d 44, 48 (2d Cir. 1994); *see also United States v. Rivera*, 679 F. App'x 51, 55 (2d Cir. 2017) ("[T]he malice of the [underlying] robbery satisfies murder's malice requirement.") (quoting *Thomas*, 34 F.3d at 48). That is, the government need not prove separately that the defendant had any particular *mens rea* as to the killing itself.

Contrary to Samuels's suggestion, nothing in the Supreme Court's decision in *Rosemond v. United States*, 572 U.S. 65 (2014), requires a different result. As we recognized in *Rivera*, *Rosemond* "did not enhance the knowledge required of an aider and abettor of § 924(j)." *Rivera*, 679 F. App'x at 55 (quoting *United States v. Garcia-Ortiz*, 792 F.3d 184, 190 (1st Cir. 2015)).

## IV

Samuels additionally contends that the jury instructions constructively amended Count Six. "A constructive amendment occurs when the charge upon

6

which the defendant is tried differs significantly from the charge upon which the grand jury voted." *United States v. Dove*, 884 F.3d 138, 146 (2d Cir. 2018). Such an amendment "occurs either where (1) an additional element, sufficient for conviction, is added, or (2) an element essential to the crime charged is altered." *Id.* (citation omitted). A constructive amendment violates the requirement of the Fifth Amendment that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V; *see Stirone v. United States*, 361 U.S. 212, 215-16 (1960) ("[A]fter an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself."). "We review de novo the question of whether an indictment was constructively amended." *United States v. Daugerdas*, 837 F.3d 212, 225 (2d Cir. 2016).

Count Six's aiding-and-abetting charge regarding the murder of Torres stated that Samuels "did aid and abet the same, to wit, SAMUELS provided firearms for the gunpoint robbery of Victim-2 at the Motel, and in the course of that robbery one of the robbers shot and killed Torres." App'x 40. At trial, however, the jury was instructed that it could consider other means of aiding and abetting, not just whether Samuels provided firearms. According to Samuels, this amounted to a constructive amendment because it "broadened the core of criminality in a manner that rendered it impossible for Mr. Samuels to be fairly informed of the charge against which he was defending." Appellant's Br. 34.

We have said that "an impermissible alteration of the charge must affect an essential element of the offense," and "we have consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial." *United States v. Patino*, 962 F.2d 263, 266 (2d Cir. 1992) (internal quotation marks omitted). "The core of criminality of an offense involves the essence of a crime, in general terms; the particulars of how a defendant effected the crime falls outside that purview." *United States v. Korchevsky*, 5 F.4th 279, 293 (2d Cir. 2021) (quoting *United States v. D'Amelio*, 683

7

F.3d 412, 418 (2d Cir. 2012)). Moreover, the jury is free to consider "additional examples of the same conduct constituting the charged scheme." *Id.* at 293.

Pursuant to these standards, we previously rejected a defendant's constructive amendment claim that "his conviction rests on facts outside the 'to wit' clause of [an economic espionage] count, which alleges only his unauthorized copying, printing, and removal of … confidential computer code" but not "continued unauthorized possession." *United States v. Agrawal*, 726 F.3d 235, 259-61 (2d Cir. 2013). In doing so, we explained that the difference in specific means did not alter the core of criminality: "the theft of trade secrets." *Id.* at 260.

Here, Samuels's provision of firearms was merely one part of "a single course of conduct" in which Samuels encouraged and facilitated the Garcia robbery. *D'Amelio*, 683 F.3d at 424. Samuels substantially assisted in the planning of the Garcia robbery and told Mingo and Martinez to return to his apartment "with the money, jewelry, and the weapons" afterward. Tr. 308. The provision of firearms did not involve the "essence" of the offense but only "the particulars of how [Samuels] effected the crime." *Korchevsky*, 5 F.4th at 293. For that reason, the jury instructions did not effect a constructive amendment.

\* \* \*

We have considered Samuels's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court